**ALBERT, Appellant,**

**v.**

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.**

[Cite as *Albert v. Ohio Dept. of Human Services* (2000), 138 Ohio App.3d 31.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76207.

Decided May 22, 2000.

32

David G. Phillips; *Budish & Solomon Ltd.* and *Armond D. Budish,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Patrick W. Beatty,* Assistant Attorney General, for appellee.

---

ANN DYKE, Administrative Judge.

Appellant, Zsofia Albert, is appealing the trial court's order affirming the decision of the Ohio Department of Human Services ("ODHS") denying Medicaid benefits to appellant. For the following reasons, we affirm.

Appellant's date of birth is May 3, 1900. She has resided in a nursing home since January 27, 1997. On January 28, 1997, her relatives cashed her certificates of deposits, and placed the net proceeds, after penalties, in appellant's bank account.

On April 28, 1997, when appellant was approaching her ninety-seventh birthday, appellant transferred $75,000 in cash to her grandchildren. The grandchildren executed a promissory note, whereby they would pay seven percent interest each month on the principal, and pay back the principal in three years. Prepayments were prohibited. The promissory note was unsecured and non-negotiable. Upon appellant's death, the grandchildren become the holders of the note.

On June 27, 1997, appellant applied for Medicaid payments to the nursing home. The nursing home vendor payment was denied on September 26, 1997. Appellant filed a request for a state hearing on October 17, 1997. A hearing was set for November 20, 1997. The hearing was rescheduled for December 2, 1997, at the request of both appellant's attorney and the prosecutor. The hearing was reset to December 10, 1997, at the request of appellant's attorney.

At the hearing, appellee's expert testified that the note had no fair market value because the note was not transferable, unsecured, the investment was risky because appellant may not survive three more years, and the interest rate was low for the amount of risk involved. Federal government bonds, a low risk investment, would yield 6.9 percent.

Appellant's expert testified that the promissory note had a fair market value of $75,000. The note generated a higher return than what appellant was receiving through certificates of deposit. The expert admitted that the note had no resale value, because it was non-negotiable.

The state hearing officer found that the note had no market value. Appellant did not show the transfer was for purposes other than qualifying for Medicaid. Coverage was restricted for twenty-three months ($75,000 divided by the monthly

rate for a long-term care facility, $3,162). This decision was issued on April 29, 1998.

Appellant appealed this decision, raising the additional claims that the ODHS delayed in issuing its opinion and the state hearing officer was not an attorney. The administrative appeal decision found (1) that the transfer was not a gift, but was for less than fair market value; (2) appellant cannot receive Medicaid if she is ineligible, solely because of an untimely decision; and (3) R.C. 5101.35 does not require state hearing officers to be admitted to the bar. The administrative hearing examiner was an attorney.

The Common Pleas Court of Cuyahoga County affirmed the decision of the ODHS, finding it was supported by reliable, probative, and substantial evidence.

I

Appellant's first assignment of error states:

"The trial court erred in affirming appellee's denial of benefits because Zsofia Albert received fair value, not no value, for her $75,000."

■ This court's review is limited to whether the court of common pleas abused its discretion as to whether the administrative decision was supported by reliable, probative, and substantial evidence and was in accordance with law. *Payne v. Ohio Dept. of Human Serv.* (1997), 123 Ohio App.3d 341, 704 N.E.2d 270.

■ A resource transfer is improper if an individual transfers his interest in a countable resource for less than fair market value, for the purpose of qualifying for Medicaid benefits. Ohio Adm.Code 5101:1–39–072; 5101:1–39–07. The ODHS had the burden to demonstrate that the transfer of the $75,000 to the grandchildren was for less than fair market value. "Fair market value" is defined as the going price for which the asset can be sold on the market. Ohio Adm.Code 5101:1–39–05(A)(5). The note was not transferrable, and could not be sold on a market. Appellant points out that the issue is whether appellant *received* fair market value, not whether the promissory note could be subsequently resold on the market. Ohio Adm.Code 5101:1–39–07(B).

Appellant did not receive fair market value in exchange for the transfer of the $75,000. All but $40 of each interest payment had to be spent on nursing home expenses, whereas she could have used the $75,000 for nursing home expenses. Ohio Adm.Code 5101:1–39–222. Appellant was not likely to receive the principal, because her life expectancy was less than three years. When the transfer was made, appellant was four days away from her ninety-seventh birthday. According to the ODHS tables, a ninety-seven-year-old female has a life expectancy of

2.97 years, and a ninety-six-year-old female has a life expectancy of 3.16 years. See Ohio Adm.Code 5101:1–39–228(G). Appellant's life expectancy on the date of transfer was approximately 2.972 years. There was sufficient evidence from which the trial court could find that ODHS maintained its burden to show that the transfer was for less than fair market value.

The individual then has the burden to show that the property transfer was made for a purpose other than to qualify for Medicaid. Ohio Adm.Code 5101:1–39–073. The individual may show another purpose for the transfer; that attempts were made to dispose the asset at fair market value; and/or there were reasons why less than fair market value was accepted. *Id.* The relationship of the transferee to the transferor may be relevant. *Id.* The presumption of an improper transfer is overcome when the accounting and the evidence discloses that the transfer was made for reasons unrelated to the receipt of assistance. *Id.*

There was no evidence that the transfer was made for a purpose other than qualifying for Medicaid benefits. There was no evidence that appellant was unable to dispose of the asset for fair market value. Appellant contends that she had to demonstrate only that she intended to dispose of the assets for fair market value or other valuable consideration. See Section 1396p(c)(2)(C), Title 42, U.S.Code. A reasonable trier of fact could find that appellant did not intend to dispose of the $75,000 cash for fair market value, because it was probable she would not receive the principal.

██ The ineligibility period is the uncompensated value of all assets transferred by an individual, divided by the average monthly cost of a nursing facility. Ohio Adm.Code 5101:1–39–077(B). Appellant contends that she was compensated in part for the $75,000. For annuities, the payout of the annuity for the period after the person's life expectancy is the amount subject to penalty. Ohio Adm.Code 5101:1–39–228(E). Here, appellant would be paid $437.50 per month interest for 2.972 years, for a total of $15,603. Appellant is urging that we deduct $15,603 from $75,000 to determine the ineligibility period.

This would be incorrect, as annuities typically involve period payments of both principal and interest. In this case, appellant has not received any value for the $75,000. Appellant will not receive the principal, because she is expected to die before it becomes due. She receives interest, but this compensates her only for the inability to use the money over the period of time the loan is outstanding. Appellant's own expert valued the note at $75,000, not more. Appellant's analogy to an annuity does not apply to the facts of this case. The agency did not act contrary to law by calculating the ineligibility period as $75,000 divided by the monthly cost of a facility.

Accordingly, this assignment of error is overruled.

## II

■ "The trial court erred in affirming appellee's denial of benefits because appellee's delay violated the law and denied appellant's right to due process."

Appellant's application was denied ninety days after the application was filed. Medicaid applications must be decided in forty-five days. Ohio Adm.Code 5101:1–2–10; Section 435.911(a)(2), Title 45, C.F.R.

There was no evidence as to why this delay took place. The state hearing decision was issued beyond seventy days after the request, even considering the delay caused by appellant's attorney. Ohio Adm.Code 5101:6–7–01(B)(1) requires the decision to be issued seventy days after the request.

Appellant asserts that the proper remedy for the delay is to award Medicaid benefits to appellant. The cases cited by appellant do not support this proposition. One case held that if the administrative agency does not timely certify the record to the court of common pleas, the court must reverse the administrative decision. *Geroc v. Ohio Veterinary Med. Bd.* (1987), 37 Ohio App.3d 192, 525 N.E.2d 501. That case mandated the reversal of sanctions by an administrative agency and did not require the award of benefits solely due to an untimely hearing. See, also, *Royer v. Ohio Real Estate Comm.* (1999), 131 Ohio App.3d 265, 722 N.E.2d 172. Other cases have held that class action plaintiffs are entitled to monetary relief under Section 1983, Title 42, U.S.Code, if the agency fails to abide by timeliness requirements, and the failure is due to more than mere negligence. See *Salazar v. Dist. of Columbia* (D.D.C.1996), 954 F.Supp. 278; *Robidoux v. Kitchel* (D.Vt.1995), 876 F.Supp. 575. Another case cited by appellant held that a state agency would be fined for failure to timely process Medicaid applications because such failure was contrary to previous court order. *Alexander v. Hill* (C.A.4, 1983), 707 F.2d 780. None of these cases holds that in an appeal of a decision denying Medicaid, failure to abide by timeliness requirements in the Medicaid application process must result in an award of benefits to someone not eligible for them.

In fact appellee is prohibited from awarding benefits to someone not entitled to them. See Ohio Adm.Code 5101:1–2–20. The delay did not prejudice appellant, because she was not entitled to benefits for twenty-three months.

Accordingly, this assignment of error is overruled.

## III

■ Appellant's third assignment of error states:

"The trial court erred in affirming appellee's denial of benefits because appellee failed to supply a state hearing officer who was an attorney, in violation of appellant's right to due process and Ohio law."

R.C. 5101.35(F) provides:

"The department of job and family services shall adopt rules in accordance with Chapter 119. of the Revised Code to implement this section, including rules governing the following:

"(1) State hearings under division (B) of this section."

R.C. 119.09 provides that an agency may appoint a referee or examiner to conduct a hearing required under R.C. 119.01 to 119.13. The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report shall have the same effect as if a hearing had been conducted by the agency. R.C. 119.09. The referee or hearing officer must be admitted to the practice of law in Ohio. *Id.* R.C. 119.09 refers to when the agency itself does not conduct a hearing, but appoints a referee or examiner. R.C. 119.09 does not require the state hearing officer of an agency be an attorney.

Ohio Adm.Code 5101:6–50–05 states that administrative hearing examiners must be admitted to the practice of law in the state of Ohio. No provision of the Ohio Revised Code or Ohio Administrative Code requires that the state hearing officers must be members of the bar.

Accordingly, this assignment of error is overruled.

The decision of the trial court is affirmed.

*Judgment affirmed.*

PATTON and ROCCO, JJ., concur.