JOURNAL ENTRY AND OPINION
Plaintiffs-appellants, William Kopp and Nancy Cramer, appeal the decision of the Cuyahoga County Common Pleas Court that upheld an administrative decision rendered by defendant-appellee, Ohio Department of Job and Family Services, finding that transfers of assets to private annuities were improper transfers for the purposes of establishing medicaid eligibility. For the reasons that follow, we affirm.
 Appeal as to William Kopp Case Numbers 80041 80232
William Kopp entered a nursing facility on October 5, 1998 and applied for medicaid benefits through the Cuyahoga County Department of Human Services ("Agency") on November 30, 1998. Shortly thereafter, Kopp entered into two separate private annuity agreements with his sister and brother-in-law, Jule and Leroy Miracle. According to the first agreement executed December 17, 1998, Kopp transferred $38,000 from his checking account to the Miracles in exchange for monthly payments of $582.54. According to the second agreement executed March 5, 1999, Kopp transferred to the Miracles $26,000, which represented the proceeds from the sale of his home, in exchange for monthly payments of $398.58. The Miracles are obligated under the agreements to pay the respective monthly amounts for a period of seventy-two months or until Kopp's death, whichever occurs first. The agreements expressly provide that Kopp's estate would have no claim on any unpaid installments if Kopp were to die prior to the end of the seventy-two month period. Kopp was eighty years old at the time of the execution of the first agreement and had a life expectancy of 6.98 years.
 Appeal as to Nancy Cramer Case Number 80081
Wilma Cramer entered a nursing facility on July 15, 1998 and applied for medicaid benefits through the Agency on September 4, 1998. On August 26, 1998, Wilma entered into a private annuity agreement with her daughter, Nancy Cramer. According to the agreement, Wilma transferred $30,000 to Nancy in exchange for monthly payments of $419.62. Nancy is obligated under the agreement to pay this amount monthly for a period of eight-four months or until Wilma's death, whichever occurs first. As in Kopp's agreements, the Cramer agreement expressly provides that Wilma's estate would have no claim on any unpaid installments if Wilma was to die prior to the end of the eighty-four month period. Wilma was eighty-three years old at the time of the execution of the annuity agreement and had a life expectancy of 7.56 years. Wilma, however, died on December 22, 1998 and Nancy was appointed executor of her estate shortly thereafter.
In all three cases, the Agency initially denied medicaid nursing facility vendor payments on the basis that the respective transfers to the applicants' relatives under the private annuity agreements constituted transfers for less than fair market value and thus were made in an attempt to shelter assets to avoid utilizing them to pay for nursing home care. The period of ineligibility for Kopp was determined to be from December 6, 1998 through June 30, 2000 while for Cramer it was from August 1, 1998 through March 31, 1999. Each decision was ultimately upheld by the Ohio Department of Job and Family Services ("ODJFS") in the administrative appeals that followed. The parties thereafter appealed to the Cuyahoga County Common Pleas court. Finding reliable, probative and substantial evidence to support the decisions rendered by ODJFS, the trial court affirmed.
Appellants are now before this court and assign five errors for our review.[1] Succinctly, appellants argue that the trial court erred in upholding the decisions rendered by ODJFS where the respective private annuity agreements were actuarially sound and irrevocable and therefore did not constitute transfers for less than fair market value.
When reviewing a decision of an administrative agency, a court of common pleas must determine whether the agency order is "supported by reliable, probative, and substantial evidence and in accordance with law." See R.C. 119.12; see, also, Mason v. GFS Leasing and Mgmt. (Feb. 7, 2002), Cuyahoga App. No. 79536, unreported at 6, 2002 Ohio App. Lexis 455. An appellate court, on the other hand, is limited to determining whether the common pleas court abused its discretion in reviewing the administrative order. Rossford Exempted Village School Dist. Bd. of Edn.v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707; Albert v. OhioDept. of Human Serv. (2000), 138 Ohio App.3d 31, 34. With this standard of review in mind, we must determine whether the trial court abused its discretion when it concluded that the transfers to appellants' relatives under the respective private annuity agreements constituted transfers for less than fair market value and therefore supported the period of restricted medicaid eligibility.
The medicaid program was established in 1965 under Title XIX of the Social Security Act. Codified at 42 U.S.C. § 1396 et seq., the purpose of the program is to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae (1980), 448 U.S. 297, 301; see, also,Wisconsin Dept. of Health and Family Serv. v. Blumer (2002), ___ U.S. ___, 122 S.Ct. 962, 966, 151 L.Ed.2d 395, ___. It is a "cooperative federal-state program that is jointly financed with federal and state funds" for those states that choose to participate. Wilder v. VirginiaHosp. Assn. (1990), 496 U.S. 498, 501. A participating state is required to develop reasonable standards for determining eligibility consistent with the Act. Section 1396a(a)(17), Title 42, U.S. Code. Ohio is a participating state and its eligibility requirements are codified at R.C.5111.01 et seq. See, also, Ohio Adm. Code 5101:1-39.
In determining whether an individual is eligible for medicaid in Ohio, an applicant's countable resources cannot exceed $1,500.00. Ohio Adm. Code 5101:1-39-05(A)(8). A resource is defined as "cash and any other personal property, as well as any real property, that an individual * * * owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Ohio Adm. Code 5101:1-39-05(A)(1). The Agency is required to review any transfer of an applicant's resources in order to determine if any transfer is improper. Ohio Adm. Code 5101:1-39-07(A).
 A resource transfer is considered to be improper if the individual transferred his legal interest in a countable resource for less than fair market value for the purpose of qualifying for medicaid, a greater amount of medicaid, or to avoid utilization of the resource.
Ohio Adm. Code 5101:1-39-07(B). Fair market value is defined as "the going price for which real or personal property can reasonably be expected to sell on the open market in the particular geographic area involved." Ohio Adm. Code 5105:1-39-05(A)(5). There is a presumption that a transfer is improper if the transfer is for less that fair market value and the transfer reduces the applicant's assets to within the resource limitation. Ohio Adm. Code 5105:1-39-072(A). The applicant can rebut this presumption by providing a full written accounting of the transfer supporting that the transfer was made for reasons unrelated to the receipt of assistance or the nonutilization of resources. Ohio Adm. Code 5101:1-39-073(A). The accounting should include the individual's (1) purpose for transferring the resource; (2) attempts to dispose of the resource at fair market value; (3) reasons for accepting less than fair market value for the resource; and (4) relationship to the person or persons to whom the resource was transferred. Ohio Adm. Code 5101:1-39-073(A)(1)-(4). If the Agency determines that a transfer was improper, the applicant is eligible for a period of restricted medicaid coverage, which, as is pertinent to this case, is the period of time that an individual is ineligible for long term care facility vendor payments. Ohio Adm. Code 5101:1-39-077(A).
Here, the Agency determined that the transfers to appellants' relatives were improper because they were for less than fair market value. Appellants argue that a validly executed private annuity agreement based on life expectancy is actuarially sound and therefore not a transfer for less than fair market value. Ohio Adm. Code 5101:1-39-228(A) defines an annuity as "a right to receive fixed, periodic payments, either for life or a term of years." An annuity is typically purchased from a bank or insurance company as part of a retirement plan. Indeed, the rules contained in the Ohio Administrative Code anticipate as much. See Ohio Adm. Code 5101:1-39-227 and 5101:1-39-228(B). Subsection (C) also provides:
 Annuities, although usually purchased in order to provide a source of income for retirement, are occasionally used to shelter assets. In order to avoid penalizing annuities validly purchased as part of a retirement plan, a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value). If the expected return on the annuity is commensurate with a reasonable estimate of the life expectancy of the beneficiary, the annuity can be deemed to be actuarially sound.
Appellants claim that the payout to them coincides with their respective life expectancies and therefore the annuities at issue are actuarially sound. Because they are actuarially sound, appellants reason that the transfers are not ones for less than fair market value. They rely on Ohio Adm. Code 5101:1-39-228(E), which provides:
 In this regard, the expected life remaining for the individual must coincide with the life of the annuity. If the individual is not reasonably expected to live longer than the guarantee period of the annuity, the individual will not receive fair market value for the annuity based on the projected return. In this case, the annuity is not actuarially sound and a transfer of assets for less than fair market value has taken place, subjecting the individual to a penalty. * * *
Merely because an annuity is actuarially sound, however, does not mean that the transfer was for fair market value. This argument alone is insufficient to rebut the presumption that the transfers at issue were improper. Appellants must rebut the presumption of improper transfer with evidence of the transfer's ultimate purpose. See Ohio Adm. Code 5101:1-39-073(A)(1); see, also, Ohio Adm. Code 5101:1-39-228(C).
In this regard, appellants claim that their purpose for establishing the private annuities was, in part, to avoid the high cost of probate and, therefore, the transfers were valid estate planning techniques. Yet no other evidence was submitted to support that appellants considered other valid estate planning devices, such as establishing the assets in non-probate form, which could have accomplished the same purpose.[2]
Additionally, appellants argue that the transfers were for fair market value because the payouts are not significantly different from annuities purchased through a commercial insurance company. Had they purchased the annuities commercially, they argue that a beneficiary designation would have had the same effect as the private annuities at issue because the designated beneficiaries would have received any unpaid installments. Merely because a commercially purchased annuity could have designated a beneficiary does not mean that such a purchase was for fair market value transfer. There is nothing in the rules to suggest that the Agency would be prevented from viewing such a transfer as one for less than fair market value if it found that the transfer was made to avoid utilization of a countable resource.
In Notarian v. Ohio Dept. of Human Serv. (Nov. 22, 2000), Cuyahoga App. No. 77032, unreported, 2000 Ohio App. Lexis 5468, this court determined that the trial court did not abuse its discretion in upholding an Agency determination that an applicant's transfer of assets to her son in exchange for two promissory notes was an improper transfer where the notes had no fair market value, were non-negotiable and non-transferrable. The same is true in this case. The annuities at issue could not be sold or assigned without the consent of the respective relatives nor could the payments be accelerated without such consent. Moreover, any unpaid installments became the property of the respective relatives-obligors upon the death of Kopp and Wilma without any claim by their respective estates.[3] These features do not comport with transfers for fair market value.
What is evident is that appellants transferred significant funds to their relatives near or around the time they applied for medicaid benefits without any showing that they considered other alternatives to disposing of their assets in a manner consistent with a transfer for fair market value. As such, appellants failed to sufficiently demonstrate that the transfers were other than improper. See, also, Albert v. Ohio Dept.of Human Serv., 138 Ohio App.3d 31.
Appellants argue alternatively that only that portion of the their respective assets that was transferred for less than fair market value should be penalized in accordance with Ohio Adm. Code 5101:1-39-228(E), which would have the effect of reducing their periods of restricted eligibility. ODJFS, argues in response, that this rule is inapplicable because it refers only to annuities validly purchased as part of a retirement plan.[4] While we acknowledge that the rule appears to anticipate its application to retirement plans, we do not find the rule's plain language to be solely confined to retirement plans.[5] This does not mean, however, that private annuities are entitled to application of Ohio Adm. Code 5101:1-39-228(E). The penalty referred to in this section is assessed on the apportioned value of the transfer found to be for less than fair market value based on the life expectancy of the respective individual. In this case, ODJFS found no error associated with the term of the annuity. Thus, application of the rule as suggested by appellants is not possible.
It is in this regard that appellants argue that valuation based on other than life expectancy should be according to the well-established rules and regulations generated by the Internal Revenue Service. The Ohio Administrative Code, however, does not require employing such valuation techniques when reviewing transfers of assets for medicaid eligibility. On the contrary, an applicant's resources are to be reviewed according to the rules promulgated in accordance with R.C. 5111.01(D) and set forth in Ohio Adm. Code 5101:1-39 et seq.[6] Application of these rules comports with the finding of ODJFS. Actuarial soundness aside, the features inherent in the transfers made by appellants indicate that the transfers were made with the intent to avoid using the resources for nursing home care. Thus, the entire amount transferred was considered as a transfer for less than fair market value. Consequently, there was nothing remaining from which to assess a penalty according to Ohio Adm. Code 5101:1-39-228(E). The trial court, therefore, did not abuse its discretion in finding that there existed reliable, probative and substantial evidence to support the decision of ODJFS finding that the transfers of funds at issue were improper.
Judgment affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J. and ANN DYKE, J., CONCUR.
[1] Appellants' five assigned errors, for the most part, challenge the propriety of the trial court's decision upholding the decision of ODJFS. We will, therefore, address the errors together as appellants did in their brief to the trial court.
[2] Appellants also claim that the transfers were made to reduce the values of their respective taxable estates. Yet, transfers made within three years of a decedent's death are scrutinized for being made "in contemplation of death." R.C. 5731.05(B).
[3] Indeed, the record supports that Wilma died shortly after the execution of the agreement and, as a result, her daughter made only four payments totaling $1,678.48. According to the terms of the agreement, Nancy stands to receive the balance of $28,321.52 and is anticipating medicaid benefits to cover the nursing facility expenses associated with her mother's stay.
[4] At least one appellate court in Ohio has determined that Ohio Adm. Code 5101:1-39-228 pertains only to commercially purchased annuities.McNamara v. Ohio Dept. of Human Serv. (2000), 139 Ohio App.3d 551,558.
[5] ODJFS maintains that it has already determined that this section applies only to annuities purchased as part of a retirement plan but directs us to no authority for that proposition nor were we independently able to locate any such authority.
[6] Appellants appear to argue that the administrative rules do not comport with the federal statute's reasonable standards requirement. See42 U.S.C. § 1396a(a)(17). This issue was not raised in the trial court and will not be considered for the first time on appeal to this court. State ex rel. Specht v. Oregon City Bd. of Edn. (1981),66 Ohio St.2d 178, 182.