OPINION
{¶ 1} Plaintiff-appellant, Florence Bateson, appeals the decision of the Warren County Court of Common Pleas affirming a decision by the Ohio Department of Job and Family Services ("ODJFS") that granted her restricted Medicaid coverage. We affirm.
 {¶ 2} On July 18, 2001, appellant purchased a $100,000 annuity from American National Insurance through a financial planner. Under the terms of the annuity agreement's Option 7 plan, appellant, who was 87 years old when the annuity was purchased, would receive monthly interest-only payments totaling around $250. The $250 payment would continue for 5.58 years — a point of time 30 days before the end of the appellant's 5.79 year life expectancy according to the actuarial table in Former Ohio Adm. Code 5101:1-39-228(F), 1996-1997 Ohio Monthly Record 2029, eff. May 1, 1997.Z[1] After 5.58 years, appellant would be provided with the option to receive either a lump sum payment of $95,000 or the opportunity to reannuitize based upon her then-existing life expectancy. Appellant designated her two children as the annuity's beneficiaries if she were to die during the payout period.
 {¶ 3} The annuity also offered a different payment plan, Option 8, which appellant did not select. Under the Option 8 plan, the monthly payments would include both principal and interest totaling nearly $20,000 of yearly income.
 {¶ 4} On September 24, 2001, appellant and her husband moved into the Otterbein Lebanon Nursing Home. In October 2001, appellant applied for Medicaid benefits, but the request was denied by the Warren County Department of Job and Family services. Appellant requested a state hearing, wherein her application was granted. However, the hearing officer found an improper transfer of funds, and the case was remanded to the county to calculate an appropriate time of restricted coverage because of the improper transfer. On June 20, 2002, after an unsuccessful appeal of the state hearing decision to ODJFS, appellant filed an appeal with the Warren County Court of Common Pleas.
 {¶ 5} On May 9, 2002, during appellant's appeal of the first state hearing decision, the Warren County Department of Job and Family Services determined that appellant's Medicaid benefits were subject to a 25-month restricted coverage period. Appellant was ineligible to receive payments for nursing care facilities as a result. Appellant subsequently requested a second state hearing regarding the period of restricted coverage. At the second state hearing, a state hearing officer found the 25-month period appropriate. Again, appellant unsuccessfully appealed this decision to ODJFS. On October 25, 2002, she appealed the decision to the Warren County Court of Common Pleas.
 {¶ 6} The common pleas court consolidated appellant's two appeals and affirmed both decisions. Appellant now appeals the common pleas court's decision raising six assignments of error that shall be addressed out of order for purposes of clarity.[2]
 {¶ 7} A court of common pleas may affirm an administrative agency's determination if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. This court's review is more limited, determining only whether the court of common pleas abused its discretion in finding that the decision of the administrative agency was supported by reliable, probative, and substantial evidence. Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619, 621,1993-Ohio-122; Albert v. Ohio Dept. of Human Serv. (2000),138 Ohio App.3d 31. However, as to questions of law, this court reviews the common pleas court's decision de novo. Moran v. OhioDept. of Commerce (1996), 109 Ohio App.3d 494, 497.
 {¶ 8} "Medicaid is a cooperative federal-state program through which the federal government offers financial assistance to participating states that provide medical care to needy individuals." Wood v. Tompkins (C.A.6, 1994), 33 F.3d 600, 602. A participating state is required to develop reasonable standards for determining eligibility consistent with the act. Section 1396a(a)(17), Title 42, U.S.Code. Ohio participates in the Medicaid program and has codified its eligibility requirements at R.C. 5111.01 et seq. See, also, Former Ohio Adm. Code 5101:1-39 et seq.
 {¶ 9} This court will first address appellant's assignments of error that contend the trial court erred in finding the purchased annuity constituted an improper transfer of funds.[3]
 {¶ 10} In determining whether an individual is eligible for Medicaid benefits in Ohio, an applicant's countable resources cannot exceed $1,500.00. Former Ohio Adm. Code 5101:1-39-05(A)(8), 1995-1996 Ohio Monthly Record 555, eff. Oct. 1, 1995.[4]
Resources are defined as "cash and any other personal property, as well as any real property, that an individual and/or spouse owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Former Ohio Adm. Code5101:1-39-05(A)(1). Because of the resource limitation, an individual might attempt to qualify for Medicaid benefits by transferring countable resources. Therefore, the agency must review a transfer of resources in order to determine if a transfer was improper. Former Ohio Adm. Code 5101:1-39-07(A), 1989-1990 Ohio Monthly Record 1162, eff. Apr. 1, 1990.[5]
 {¶ 11} A resource transfer is considered improper if the individual transferred his legal interest in a countable resource for less than fair market value for the purpose of qualifying for Medicaid, a greater amount of Medicaid, or to avoid the utilization of the resource. Former Ohio Adm. Code5101:1-39-07(B). ODJFS bears the burden of demonstrating that the transfer was for less than fair market value, Albert,138 Ohio App.3d at 34. Fair market value, for purposes of this section, is defined as "the going price for which real or personal property can reasonably be expected to sell on the open market in the particular geographic area involved." Former Ohio Adm. Code5101:1-39-05(A)(5).
 {¶ 12} ODJFS found appellant's purchase of the annuity was a transfer of resources for less than fair market value. Appellant argues that the annuity does not constitute an improper transfer for less than fair market value because it was actuarially sound. Appellant relies on the annuities section of Former Ohio Adm. Code 5101:1-39-228. Former Ohio Adm. Code 5101:1-39-228 defines an annuity as "a right to receive fixed periodic payments, either for life or a term of years." In particular, appellant cites Subsection (E) which states:
 {¶ 13} "The average number of years of expected life remaining for the individual must coincide with the life of the annuity. If the individual is not reasonably expected to live longer than the guarantee period of the annuity, the individual will not receive fair market value for the annuity based on the projected return. In this case, the annuity is not actuarially sound and a transfer of assets for less than fair market value has taken place, subjecting the individual to a penalty."
 {¶ 14} Despite appellant's assertions otherwise, the regulation does not stand for the proposition that an actuarially sound annuity is necessarily purchased for fair market value. Former Ohio Adm. Code 5101:1-39-228, however, does provide warning that annuities are "occasionally used to shelter assets." Former Ohio Adm. Code 5101:1-39-228(C). Annuities are "usually purchased to "provide a source of income for retirement." Id. In order to determine whether the annuity at issue here should receive the protections provided in Former Ohio Adm. Code 5101:1-39-228, it is important to look at the "ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value)." Id.
 {¶ 15} The fact that the annuity at issue was actuarially sound does not require a finding that the transfer was for fair market value. See Kopp v. Ohio Dept. of Job and Family Serv.
(Apr. 11, 2002), Cuyahoga App. Nos. 80041, 80081, 80232. While Former Ohio Adm. Code 5101:1-39-228(E) states an annuity that is not actuarially sound will constitute a transfer of assets for less than fair market value, the regulation does not limit the scope of an annuity's value determination to mere actuarial soundness. Both ODJFS and the court of common pleas determined that the ultimate purpose of this transfer was to shelter appellant's assets.
 {¶ 16} In the case at bar, Option 7 of appellant's annuity creates a payment plan that will always be actuarially sound — allowing annuitant to re-annuitize until she dies before the end of her projected life expectancy. In theory, an annuitant who continually defied the life expectancy tables could maintain the possibility of receiving the lump sum payment 30 days before the end of the period, thus receiving a comparable projected return of her original investment. However, if appellant were to die any time from the moment of annuitization up to 31 days before the end of the payout period, she will have been deprived of her entire $100,000 investment save the little more than $16,000 of monthly interest payments received.
 {¶ 17} In a similar case, the Eighth District found that the execution of a 3-year promissory note was not for fair market value when the promisee, who had a life expectancy of only 2.97 years, was not likely to receive the principal repayment.Albert, 138 Ohio App.3d at 34-35. ODJFS in appellant's case similarly found that appellant's health and condition created the strong likelihood that she would not live the average life expectancy. The court of common pleas agreed and found that the annuity's ultimate purpose was to preserve the assets for her children, the designated beneficiaries. There was sufficient evidence from which the common pleas court could find that ODJFS maintained its burden to show that the transfer was for less than fair market value.
 {¶ 18} Upon the agency showing, an individual then has the burden to show that the property transfer was made for a purpose other than to qualify for Medicaid. See Former Ohio Adm. Code 5101:1-39-073, 1989-1990 Ohio Monthly Record 1163, eff. Apr. 1, 1990;[6] Albert, 138 Ohio App.3d at 35. The applicant can rebut the presumption that the transfer was improper by providing a full written accounting of the transfer, with facts supporting the contention that the transfer was made for reasons unrelated to qualify for assistance. Former Ohio Adm. Code 5101:1-39-073(A). The accounting should include the following:
 {¶ 19} "(1) The individual's purpose for transferring the resource.
 {¶ 20} "(2) The individual's attempts to dispose of the resource at fair market value.
 {¶ 21} "(3) The individual's reasons for accepting less than fair market value for the resource.
 {¶ 22} "(4) The individual's relationship, if any, to the persons to whom the resource was transferred."
 {¶ 23} Former Ohio Adm. Code 5101:1-39-073(A)(1)-(4).
 {¶ 24} Appellant argues she rebutted the presumption by presenting evidence that the annuity was purchased for purposes of providing appellant with an income source to cover assisted living expenses in the event of her husband predeceasing her and limiting negative tax consequences. The agency and the common pleas court found that appellant failed to prove that there were no Medicaid related reasons for the purchase of the annuity.
 {¶ 25} Within a 90-day period, appellant purchased a financial instrument that transferred nearly all of her countable resources, discovered that she and her husband needed nursing care, moved to the Otterbein nursing facility, and applied for Medicaid. Despite appellant's argument that the need for nursing care had not been considered prior to the annuity's purchase, the record shows that appellant was 87 years old and suffered from mild senile dementia. Her husband, who was older, expected to predecease her. Appellant and her husband's acceptance to Otterbein occurred so quickly because the two requested placement on the nursing facility's wait list in 1992.
 {¶ 26} Additionally, there was no evidence that explained why Option 7 was chosen over Option 8. Given appellant's alleged need for a stream of income, the Option 8 plan consisting of monthly payments that included both principal and interest would have provided appellant with the income source to pay for a nursing facility. A reasonable trier of fact could find that appellant intended to dispose of the $100,000 of countable resources to bring her within the resource limitation. The court of common pleas did not abuse its discretion finding the agency decision was supported by reliable, probative, and substantial evidence. Accordingly, appellant's first, third, and fourth assignments of error are overruled.
 {¶ 27} This court will now address appellant's second assignment of error in which she argues against the agency's decision to impose a 25-month period of restricted coverage because of the improper transfer.
 {¶ 28} After the agency determines an improper transfer occurred, an applicant is eligible for a period of restricted Medicaid coverage, defined, as pertinent to this case, as "the period of time that an individual is ineligible for long term care facility vendor payments." Former Ohio Adm. Code 5101:1-39-077(B), 1995-1996 Ohio Monthly Record 2584, eff. Jun. 1996.[7] The ineligibility period is calculated by dividing the total uncompensated value of the transferred resources by the current average monthly cost of a nursing facility. Id.
 {¶ 29} Appellant again relies on the annuities protection provided by Former Ohio Adm. Code 5101:1-39-228. She erroneously equates actuarial soundness with a transfer for fair market value. Appellant argues that because she will receive both the principal and interest payments at the end of the annuity's specified payout period, the value of transferred resources will be totally compensated.
 {¶ 30} However, appellant's annuity is not entitled to the protection of Former Ohio Adm. Code 5101:1-39-228 because the ultimate purpose of the instrument is to shelter appellant's assets. The possibility of perpetual re-annuitization with monthly interest-only payments allows the appellant to improperly preserve the $100,000 principal. In Albert, the Eighth District addressed a similar payment plan involving promissory notes:
 {¶ 31} "[A]nnuities typically involve period payments of both principal and interest. In this case, appellant has not received any value for the $75,000. Appellant will not receive the principal, because she is expected to die before it becomes due. She receives interest, but this compensates her only for the inability to use the money over the period of time the loan is outstanding." Albert, 138 Ohio App.3d at 35.
 {¶ 32} No value is received by payments of interest only. Despite actuarial soundness, the annuity has been created with the intent to avoid using resources that otherwise could be used for nursing home care.
 {¶ 33} Thus, the agency found the uncompensated value of the resource was the entire amount transferred. The agency divided the $100,000 by $3,903, the average private pay nursing home rate in Ohio, resulting in the 25-month computation of restricted coverage that appellant received. The court of common pleas did not abuse its discretion in affirming the agency's determination.
 {¶ 34} Appellant's fifth assignment of error argues that the state hearing officer did not base her decision on the facts presented. Specifically, appellant argues that the hearing officer ignored evidence demonstrating that the annuity was purchased for reasons wholly unrelated to qualifying for Medicaid. The common pleas court, however, stated that the hearing officer did consider appellant's evidence but found it unconvincing. Contrary to appellant's evidence that the annuity was to provide a source of income should her husband predecease her, there was substantial evidence demonstrating that appellant considered the transfer as a means of falling within the resource limitation. The rapid sequence of events coupled with appellant's mental and physical condition did not support appellant's proffered reasons. We cannot say the common pleas court abused its discretion in finding the administrative agency's decision was supported by reliable, probative, and substantial evidence. Appellant's fifth assignment of error is overruled.
 {¶ 35} Appellant's final assignment of error states that the review administrative officer ignored the laws of Ohio by findingAlbert inapplicable in the present case. We find this final assignment of error moot because this court has reviewed questions of law de novo. Appellant's sixth assignment of error is overruled.
 {¶ 36} Judgment affirmed.
Powell, P.J., and Valen, J., Concur.
[1] All references to this section shall herein be referred to as "Former Ohio Adm. Code 5101:1-39-228."
[2] We have construed appellant's designated "Arguments" as assignments of error and shall refer to them accordingly.
[3] {¶ a} Regarding the nature of the transfer of resources, appellant raises the following assignments of error:
{¶ b} "I. The financial product purchase by Florence Bateson is an annuity as defined by Ohio Administrative Code Section 5101:1-39-228.
{¶ c} " * * *
{¶ d} "III. The purchase of the Annuity was for fair market value.
{¶ e} "IV. Assuming there was a presumption of an Improper Transfer, the Appellant has adequately rebutted that presumption."
[4] All references to this section shall herein be referred to as "Former Ohio Adm. Code 5101:1-39-05."
[5] All references to this section shall herein be referred to as "Former Ohio Adm. Code 5101:1-39-07."
[6] All references to this section shall herein be referred to as "Former Ohio Adm. Code 5101:1-39-073."
[7] All references to this section shall herein be referred to as "Former Ohio Adm. Code 5101:1-39-077."