KINASZ–REAGAN, Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellee.

[Cite as *Kinasz–Reagan v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 458, 2005-Ohio-5848.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85768.

Decided Nov. 3, 2005.

Walter P. Bubna, for appellant.

Ara P. Mekhjian, Assistant Attorney General, for appellee.

---

PATRICIA ANN BLACKMON, Administrative Judge.

{¶ 1} Appellant, Mary Kinasz–Reagan, appeals the trial court's judgment affirming the decision of the Ohio Department of Job and Family Services ("the agency"), which imposed a period of restrictive coverage for Medicaid benefits as a result of an improper transfer of real estate. On appeal, Reagan assigns the following errors for our review:

I. The trial court erred in ruling that the ruling of the administrative agency was based on reliable, probative, and substantive evidence. The trial court erred as a matter of law and also abused its discretion when it ruled that there was a period of Medicaid ineligibility, when the effective date of the subject property transfers was September 30, 2002, and therefore no period of Medicaid ineligibility should exist.

II. The trial court erred when it failed to hold that the transfer of the family real estate from the mother Justyna Kinasz to her daughter, Mary Kinasz Reagan, met one of the exceptions to resource transfers and otherwise was Medicaid eligible, as a gift and/or for valuable consideration by daughter Mary Kinasz to her mother Justyna Kinasz.

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶ 3} On September 30, 2002, Justyna Kinasz transferred two parcels of real estate to her daughter, Mary Kinasz–Reagan, by quitclaim deeds for the nominal amount of $20. One parcel of real estate was Justyna Kinasz's home, which was

valued at $26,900. The other parcel of real estate was an adjoining lot valued at $1,500.

{¶ 4} On October 9, 2002, Reagan gave the deeds to her husband, Ronald Reagan, who, in turn, gave the deeds to an attorney. In giving the deeds to the attorney, Reagan's husband instructed him to file the deeds when he had an opportunity, but advised that there was no hurry. The attorney recorded the deeds over a year later on November 7, 2003.

{¶ 5} Meanwhile, on October 7, 2003, Reagan's mother entered a nursing home. On the same day, Reagan filed an application for Medicaid benefits on behalf of her mother. The agency approved the application effective October 1, 2003, with a six-month period of restricted eligibility that began on October 1, 2003, and ran through March 31, 2004. During the period of restricted coverage, an individual is ineligible for long-term care vendor payment, but a Medicaid card can be issued for other Medicaid-covered services as long as all other eligibility criteria are met.

{¶ 6} Reagan disagreed with the agency's determination and requested a hearing. Reagan claimed that the six-month period of restrictive coverage should have begun on September 1, 2002, because the quitclaim deeds were dated September 30, 2002. However, in a decision dated January 22, 2004, the state hearing officer found that the agency's approval of Medicaid with the period of restricted coverage was correct because the quitclaim deeds were recorded on November 7, 2003, and the restrictive coverage was still in effect at the time of the application for Medicaid benefits. Pursuant to Ohio Admin. Code 5101:1–39–07(2), a period of restrictive coverage begins the first day of the month in which the resources were transferred.

{¶ 7} Reagan disagreed with the state hearing decision and pursued an administrative appeal. In an administrative decision issued on February 20, 2004, the administrative hearing examiner vacated and remanded the state hearing decision. On remand, the state hearing officer was instructed to determine whether there was sufficient evidence in the record to make the determination whether the quitclaim deeds were established on the date of signature rather than on the date of recording. In addition, the state hearing officer was instructed to convene a supplemental hearing if there was insufficient evidence in the record to make the determination.

{¶ 8} A supplemental hearing was convened, and Reagan submitted additional evidence to support her claim that the restrictive coverage should have begun on September 1, 2002. However, in a decision dated March 26, 2004, the state hearing officer found that the evidence did not establish that a property agreement or pledge was entered into, and that there was no time certain related to the execution of an agreement. The state hearing officer found that the date of

the transfer of the property was the date the quitclaim deeds were recorded, on November 7, 2003, and consequently the period of restrictive Medicaid coverage began in November 2003.

{¶ 9} Thereafter, Reagan appealed to the common pleas court, which upheld the agency's decision. Reagan now appeals.

## RESTRICTIVE MEDICAID COVERAGE

{¶ 10} We will address Reagan's two assigned errors together, because germane to both is the argument that the trial court erred in affirming the agency's determination that the period of restrictive Medicaid coverage began when the quitclaim deeds were recorded.

{¶ 11} A court of common pleas may affirm an administrative agency's determination if it is supported by reliable, probative, and substantial evidence and is in accordance with law.[1] This court's review is more limited, determining only whether the court of common pleas abused its discretion in finding that the decision of the administrative agency was supported by reliable, probative, and substantial evidence.[2] However, as to questions of law, this court reviews the common pleas court's decision de novo.[3]

{¶ 12} Medicaid is a cooperative federal-state program through which the federal government offers financial assistance to participating states that provide medical care to needy individuals.[4] A participating state is required to develop reasonable standards for determining eligibility consistent with the act.[5] Ohio participates in the Medicaid program and has codified its eligibility requirements at R.C. 5111.01 et seq.[6]

{¶ 13} In determining whether an individual is eligible for Medicaid benefits in Ohio, an applicant's countable resources cannot exceed $1,500.[7] Resources are defined as "cash and any other personal property, as well as any real property, that an individual and/or spouse owns, has the right, authority, or power to

---

1. R.C. 119.12.

2. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748; *Albert v. Ohio Dept. of Human Serv.* (2000), 138 Ohio App.3d 31, 740 N.E.2d 310.

3. *Moran v. Ohio Dept. of Commerce* (1996), 109 Ohio App.3d 494, 497, 672 N.E.2d 699.

4. *Wood v. Tompkins* (C.A.6, 1994), 33 F.3d 600, 602.

5. Section 1396a(a)(17), Title 42, U.S.Code.

6. See, also, former Ohio Adm.Code 5101:1–39 et seq.

7. Ohio Adm.Code 5101:1–39–05(A)(8).

convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance."[8] Because of the resource limitation, an individual might attempt to qualify for Medicaid benefits by transferring countable resources. Therefore, the agency must review a transfer of resources in order to determine whether a transfer was improper.[9]

{¶ 14} A resource transfer is considered to be improper if the individual transferred his legal interest in a countable resource for less than fair market value for the purpose of qualifying for Medicaid, a greater amount of Medicaid, or to avoid utilization of the resource.[10]

{¶ 15} If the agency determines that a transfer was improper, the applicant is eligible for a period of restrictive Medicaid coverage, which, as is pertinent to this case, is the period of time that an individual is ineligible for long-term care facility vendor payments.[11]

{¶ 16} Reagan does not dispute that the conveyance of the properties constitutes an improper transfer, which triggered a six-month period of restrictive coverage. Instead, Reagan argues that the period of restrictive coverage should have begun when the quitclaim deeds were executed. We disagree.

{¶ 17} Pursuant to Ohio Admin. Code 5101:1–39–32.1(B), the recording date is the date the property agreement is recorded with the county auditor, county recorder, or other appropriate governmental agency. The date of signature is the date the individual actually signed the instrument creating the agreement. For property agreements recorded within six months after the date of signature, the county agency shall consider the date of signature as the date of the agreement. If a property agreement is recorded more than six months after the date of signature, as is the case here, the applicant must produce documentation from other sources verifying that the agreement was established on the date of signature rather than the date of recording.

{¶ 18} In accordance with Ohio Admin. Code 5101:1–39–32.1(B), Reagan provided additional information for the agency to consider. The agency considered the tax records related to the properties. The tax records indicated that the tax mailing address remained in her mother's name and was not changed until after her mother entered the nursing home, and the deeds were subsequently recorded. In addition, Reagan provided no evidence that anyone other than her mother

---

8. Ohio Adm.Code 5101:1–39–05(A)(1).

9. Ohio Adm.Code 5101:1–39–07(A).

10. Ohio Adm.Code 5101:1–39–07(B).

11. Ohio Adm.Code 5101:1–39–077(A).

paid the taxes from the date the deeds were executed until they were finally recorded.

{¶ 19} Further, the agency found that Reagan's mother continued to reside alone in the house until she entered the nursing home and that she was still financially responsible for the maintenance and upkeep of the home. For example, Reagan presented no evidence that the cost of utilities and property insurance was being borne by anyone other than her mother.

{¶ 20} Finally, during the administrative appeal, Reagan provided an affidavit from the attorney who prepared the quitclaim deeds. The attorney indicated by written receipt [12] that the "[d]eeds will be filed when attorney finds an opportunity to do so with the understanding that there is no hurry or crisis to file the deeds." This statement refutes the argument that an agreement to transfer was reached on the day the deeds were executed. Instead, it strongly implies that time was not an issue, which was borne out by the fact that the deeds were not recorded for more than a year.

{¶ 21} A deed must be delivered to be operative as a transfer of ownership of land, for delivery gives the instrument force and effect. [13] Recording a new deed perfects delivery, and the gift becomes irrevocable. [14] An effective delivery, however, also requires an acceptance on the part of the grantee, coupled with the mutual intent of the parties to pass title to the property described in the deed. [15]

{¶ 22} Despite Reagan's assertions to the contrary, the record does not indicate that a mutual intent to pass title to the properties was established at the time the deeds were executed. Instead, the above facts support the agency's conclusion that Reagan's mother continued to exercise legal ownership and control of the properties. Further, the facts indicate that at the time the deeds were executed, there was no present, immediate, and unconditional intent to transfer the property to Reagan. Consequently, the agency's decision was supported by reliable, probative, and substantial evidence. Thus, the trial court did not abuse its discretion in affirming the agency's decision. Accordingly, we overrule Reagan's assigned errors.

Judgment affirmed.

COONEY and CORRIGAN, JJ., concur.

---

12. Exhibit F.

13. *Kniebbe v. Wade* (1954), 161 Ohio St. 294, 297, 53 O.O. 175, 118 N.E.2d 833.

14. *Romaniw–Dubas v. Polowyk* (Aug. 10, 2000), Cuyahoga App. No. 75980, 2000 WL 1144784.

15. *Kniebbe,* supra.