**LIFESPHERE, d.b.a. Maple Knoll Village, Appellee,**

v.

**SAHND, Appellant.**

[Cite as *Lifesphere v. Sahnd,* 179 Ohio App.3d 685, 2008-Ohio-6507.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080241.

Decided Dec. 12, 2008.

Benesch, Friedlander, Coplan & Aronoff and Jennifer Turk, for appellee.

Schwartz, Manes, Ruby & Slovin, William S. Wyler, and Hallie S. Borellis, for appellant.

---

Mark P. Painter, Judge.

{¶ 1} Defendant-appellant Jack Sahnd appeals the entry of summary judgment for plaintiff-appellee, Lifesphere, on its claim that Jack's mother, Kathleen, had fraudulently transferred her home to Jack under R.C. 1336.04. We affirm.

{¶ 2} Kathleen was 80 plus when, in January 2005, she gave her house to her son Jack Sahnd. About seven months later, Kathleen moved to Maple Knoll, a geriatric-care nursing home operated by Lifesphere, and she lived there until she died in January 2006.

{¶ 3} Under Ohio Adm.Code 5101:1–39–07, certain transfers of resources are deemed improper and render an applicant ineligible for Medicaid coverage. After she had already moved to Maple Knoll, the Hamilton County Department of Job and Family Services ("JFS") approved Kathleen's Medicaid application, but with certain date restrictions prohibiting her Medicaid benefits from vesting until September 2007. JFS deemed her transfer of real property to Jack improper because the transfer without compensation violated the administrative guidelines governing Medicaid eligibility.[1] Specifically, the transfer did not fall within the Medicaid exception that would have allowed a transfer without consideration if the transferee was an adult disabled child.[2] Jack failed to prove that he was an adult disabled child. Because the transfer was deemed improper, Kathleen's benefits were restricted, and no money could be obtained from Medicaid.

{¶ 4} While she was ineligible to receive Medicaid benefits, Kathleen became increasingly indebted to Maple Knoll; after she died, her estate could not pay her nursing-home bills. Lifesphere sued under Ohio's fraudulent-conveyance statute[3] and then moved for summary judgment. The trial court granted the motion, concluding that the transfer of realty had been committed fraudulently under R.C. 1336.04.

{¶ 5} In his appeal, Sahnd argues that Lifesphere was not entitled to summary judgment because the trial court did not construe the evidence in his favor, and because it considered issues not supported by evidence in the record.

## I. Gifting Realty

{¶ 6} In January of 2005, Kathleen transferred her house to Jack for no consideration. Later, in August of 2005, Kathleen became a resident of Maple Knoll, a long-term care facility operated by Lifesphere. A month later, Kathleen asked Mary Metzmeier, one of Lifesphere's licensed social workers, to complete her Medicaid application—at the time, Jack lived outside of Ohio. Metzmeier filed Kathleen's Medicaid application and requested information from Jack to complete the application. During the application process, it was learned that in January 2005, Kathleen had transferred her house to Jack. Jack claimed that the transfer was proper because he was an adult disabled child. JFS requested additional information regarding Jack's disability, but it ultimately determined that the transfer from Kathleen to Jack was improper, and that the transfer

---

1.  Ohio Adm.Code 5101:1–39–07.

2.  See Ohio Adm.Code 5101:1–39–07(E)(1)(c).

3.  R.C. 1336.04.

rendered her ineligible to receive Medicaid benefits during the time she spent at Maple Knoll. So JFS approved Kathleen's Medicaid benefits, but because of the improper January 2005 transfer, her benefits would not vest until September 2007. JFS's determination that the transfer was improper was not appealed.

## II. The Statute Against Fraudulent Transfers

{¶ 7} Under Ohio law, gifts intended to defraud creditors are unlawful. A debtor's transfer of assets may be fraudulent under the statute if the transaction was completed (1) with the actual intent to defraud the creditor, or (2) through constructive fraud, where the debtor had no actual intent to commit fraud.[4] Thus transfers are fraudulent as to a creditor if either the debtor made the transfer with intent to defraud, or the transfer was made without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that she would incur debts beyond her ability to pay as they became due.[5] A constructively fraudulent transfer occurs when the debtor transfers an asset without receiving consideration, and the debtor at least reasonably believes that she will incur debts beyond her ability to pay as they become due.[6]

{¶ 8} The time limit for filing an action under the actual-intent section[7] is within four years after the transfer was made or the obligation was incurred or, under certain circumstances, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant[8]; and if the action is brought under a constructive-fraud theory,[9] the action must commence within four years after the transfer was made or the obligation was incurred.[10] Lifesphere's suit was filed well within time.

{¶ 9} The trial court, citing *Colonial Guild Ltd. v. Pruitt*,[11] ruled that the transfer was fraudulent as a matter of law because it rendered Kathleen insolvent and because it was made without fair consideration. The trial court's pronounce-

---

4. *Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859, 834 N.E.2d 358, at ¶ 52.

5. R.C. 1336.04.

6. R.C. 1336.04.

7. R.C. 1336.04(A)(1).

8. R.C. 1336.09.

9. Id.

10. See *Davis v. McDowell*, 6th Dist. No. H–06–001, 2006-Ohio-3385, 2006 WL 2242875.

11. (Apr. 4, 2001), 9th Dist. No. C.A. 00CA007696, 2001 WL 324377.

ment of the black-letter law follows: "If a creditor proves that a transfer made the debtor insolvent and the transfer was made without fair consideration, a transfer is fraudulent as a matter of law." This language likely was based on R.C. 1336.05, which addresses creditors whose claims arose *before* the transfer was made or the obligation was incurred. In dicta, the court in *Colonial Guild* stated that "to establish a fraudulent conveyance under either R.C. 1336.04 or 1336.05, a creditor must prove that the debtor was insolvent or would be made so by the transfer in issue and that the transfer was made without fair consideration. If both of these burdens are met, the transfer is fraudulent as a matter of law. Neither the intent of the debtor nor the knowledge of the transferee need be proven." But this statement is incorrect to the extent that it relates to R.C. 1336.04.

{¶ 10} Proving that a transfer is fraudulent under R.C. 1336.04 requires more than a mere showing that the debtor was insolvent or would be made so by the transfer at issue, and that the transfer was made without fair consideration. As we have noted previously, under R.C. 1336.04 the creditor must show either that the debtor actually intended to defraud, or that the transfer was made without receiving a reasonably equivalent value in exchange for the transfer, *and* that the debtor intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due.

{¶ 11} We must be careful when interpreting words (and statutes). The trial court's statement of law would have been correct if Kathleen's debt had already been incurred when she transferred her property. But when Kathleen transferred the property, Maple Knoll and Lifesphere were not creditors—she owed them nothing. Her debt to Maple Knoll arose months after the transfer. R.C. 1336.05 did not apply. The applicable analysis should have been under R.C. 1336.04, along with its reasonable-belief-of-the-inability-to-pay-debts-as-they-become-due language.

{¶ 12} But the trial court in the alternative also determined that, under R.C. 1336.04, Kathleen had transferred her real property for no consideration and that, being over 80, she reasonably should have believed that she would incur debts beyond her ability to pay. The trial court reasoned that a person of her age should have reasonably believed that she could enter a nursing home in the near future or require some other form of major medical treatment. We now discuss the relationship, or lack thereof, between Ohio's fraudulent-conveyance statutes and its statutes governing Medicaid eligibility.

### III. Medicaid and Improper Transfers

{¶ 13} Medicaid is a cooperative federal-state program where the federal government offers financial assistance to participating states that provide medical

care to needy individuals.[12]   Ohio is a Medicaid participant, and its eligibility requirements are codified in R.C. 5111.01 et seq.

{¶ 14} At this juncture, we feel compelled to address a misconception about Ohio's statutes governing Medicaid eligibility and those prohibiting fraudulent transfers.   The separate statutory schemes are not synonymous—the provisions of the Ohio Administrative Code governing Medicaid eligibility[13] and Ohio's statute against fraudulent transfers[14] (and the defenses to each) cannot be used interchangeably.   As the court noted in *Romaniw–Dubas v. Polowyk,* merely because a transfer is improper as to a Medicaid application does not necessarily mean the transfer is also improper as a fraudulent conveyance.[15]   While the facts present in *Romaniw–Dubas* are not the same as those in this case, we are convinced that its underlying rationale—that an improper transfer for purposes of Medicaid is not dispositive of whether the transfer is improper under Ohio's statute against fraudulent transfers—applies here.   Thus an administrative hearing before JFS cannot under a theory of res judicata bar later proceedings in the common pleas courts under R.C. 1336.04—because the issues and claims for Medicaid eligibility are not the same as those under the fraudulent-conveyance statute.[16]   We also note that the Medicaid eligibility exception allowing a transfer without compensation to an adult disabled child does not appear to be an exception or defense to the statutory prohibition of fraudulent conveyances. Thus, Jack's defense that he was a disabled adult child of Kathleen Sahnd was of no legal significance to Lifesphere's claim under R.C. 1336.04.

## IV.   Constructively Fraudulent

{¶ 15} We are left with the question whether Lifesphere proved that Kathleen's transfer was constructively fraudulent.   Lifesphere would have had to show that a person of her age should have reasonably believed that she could enter a nursing home in the near future or require some other form of major medical treatment.   The trial court determined that Lifesphere had met its burden, and we agree.

---

12.   *Wood v. Tompkins* (C.A.6, 1994), 33 F.3d 600, 602;   *Bateson v. Ohio Dept. of Job & Family Servs.,* 2004-Ohio-6247, 2004 WL 2676288.

13.   Ohio Adm.Code 5101:1–37 to 5101:1–41.

14.   R.C. 1336.04.

15.   (Aug. 10, 2000), 8th Dist. No. 75980, 2000 WL 1144784.

16.   R.C. 1336.04.

{¶ 16} The trial court did not fail to construe the evidence in Sahnd's favor: as we have mentioned, even if the transfer had been improper under Ohio Adm. Code 5101, that did not negate a civil suit under R.C. 1336.04. And while we sympathize with Jack's position, we must stress that his defense in this case was no defense under R.C. 1336.04. If he could have shown at the JFS administrative hearing that he was an adult disabled child (which is what usually happens), then Kathleen's Medicaid benefits would have likely vested immediately and without penalty, and Medicaid would have paid the nursing-home bill—thus the issue of fraudulent transfer would not have arisen, at least as to the Lifesphere debt. But he failed to show his disability, and he did not appeal that adverse ruling.

{¶ 17} Kathleen gave her home to her son, leaving her with monthly social-security and pension checks as sources of income. Otherwise she had little or no assets. We are convinced, for purposes of Lifesphere's claim, that the transfer from Kathleen to Jack violated Ohio's statute against fraudulent conveyances because after the transfer of the bulk of her assets, Kathleen should have reasonably believed that she would incur debts beyond her ability to pay as they became due.

■ {¶ 18} We hold that anyone, of any age, who transfers their major asset without consideration, leaving little or no assets, is liable to creditors who shortly thereafter extend credit without knowledge of the transfer. Of course, an action seeking to set aside a property transfer under the fraudulent-conveyance statutes is subject to the one- and four-year time limitations found in R.C. 1336.09.

{¶ 19} We reject Sahnd's second assignment of error that the trial court considered issues that were not supported by the evidence. The evidence used by the court in entering summary judgment, as well as the evidence considered in this opinion, was properly before the court and supported a judgment favoring Lifesphere on its claim under R.C. 1336.04.

{¶ 20} The trial court did not err in entering summary judgment for Lifesphere, and we affirm its judgment.

Judgment affirmed.

SUNDERMANN, P.J., and HENDON, J., concur.