[Cite as *Liberty Nursing Ctr. of Englewood, Inc. v. Valentine*, 2012-Ohio-1096.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

LIBERTY NURSING CENTER           :
OF ENGLEWOOD, INC.

    Plaintiff-Appellant                                    :
                                  C.A. CASE NO. 24685

v.                                                      :
                                  :       T.C. NO. 09CV7418

EVA L. VALENTINE, et al.          :          (Civil appeal from
                                          Common Pleas Court)
    Defendants-Appellees                              :

                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   16th   day of   March  , 2012.

. . . . . . . . . .

WAYNE E. WAITE, Atty. Reg. No. 0008352 and ADAM C. ARMSTRONG, Atty. Reg. No. 0079178, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

J. PIERRE TISMO, Atty. Reg. No. 0067924 and RYAN C. BECK, Atty. Reg. No. 0085592, 131 N. Ludlow Street, Suite 1400, Dayton, Ohio 45402
    Attorneys for Defendants-Appellees

. . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the Notice of Appeal of Liberty Nursing Center of Englewood, Inc., DBA Englewood Manor ("Liberty"), filed June 14, 2011. Liberty appeals from the trial court's June 6, 2011 decision sustaining in part and overruling in part the motion for relief from judgment of Eva L. Valentine, Karen S. Cyphers, Tenia F. O'Neal and Sheila Stewart (collectively, "Defendants").

**{¶ 2}** On September 10, 2009, Liberty, a licensed and certified nursing facility, filed a "Complaint for Money Damages with Notice Required by the Fair Debt Collection Practices Act" against Defendants. Liberty alleged that Cyphers, on behalf of and as "Responsible Party" for Valentine, executed a Licensed Nursing Agreement ("Agreement"), and a Licensed Nursing Admission Authorizations ("Authorizations"), pursuant to which Cyphers and Valentine agreed to pay for room, board and services provided by Liberty to Valentine. Pursuant to the Agreement and Authorizations, Liberty alleged that it provided room, board and services to Valentine between June, 2008 and May, 2009. Liberty further alleged that Defendants misappropriated Valentine's income, assets and resources for their personal benefit since June, 2008.

**{¶ 3}** Against Valentine and Cyphers, Liberty asserted claims of breach of contract, unjust enrichment/quasi contract and promissory estoppel. Against all Defendants, Liberty asserted a claim of fraudulent conveyance of property. The property at issue was located at 416 Wegner Road, Trotwood. Finally, Liberty asserted a claim on account, pursuant to a Statement attached to the complaint showing a balance due of $41,978.50, representing the unpaid balance for goods and services rendered up to and including May, 2009. In addition to the Statement, the Agreement and the Authorizations were also attached to the complaint.

**{¶ 4}** Relevant sections of the Agreement provide:

## II. DEFINITIONS

\* \* \*

**B. <u>Responsible Party</u>**: The person (1) who has legal access to and guarantees payment from the Resident's own income, assets or resources, including Social Security, pension or retirement funds, annuities, insurance, etc., for charges incurred by the Resident for services performed by the Facility or on the Resident's behalf by any other person or company for which the Resident is or would be responsible for payment to or through Facility billing, and who has an interest or responsibility in the Resident's welfare; and (2) who has identified himself to the Facility as the person responsible for exercising the rights of a Resident who is mentally or physically incapable to exercising such rights on his own behalf. \* \* \*

## III. RESIDENT'S FINANCIAL OBLIGATIONS

\* \* \*

**B. <u>Services not Covered by the Basic Fee:</u>** Resident and/or Responsible Party agree to be responsible for all charges incurred for Resident's care which are not covered by the Basic Fee. \* \* \*

**C. <u>No Requirement of a Third Party Guarantee:</u>**

<u>**The Responsible Party:**</u>

(1) Is not required to sign this Agreement as a condition of admission.

(2) Is not in any way personally liable

for payment of

charges   incurred

by   the   Resident.

If the Resident is not competent, the Responsible Party would be liable for payment of charges incurred by the Resident.   Payment for such services is to be made from Resident's income, assets or resources to which the Responsible Party has legal access.

{¶ 5}   Relevant Sections of the Authorizations provide:

**C.    Responsible Party's Statement of Obligation Pending Approval of Medicaid Application (if applicable)**

* * *

3.   I have legal access to the Resident's income, assets or resources, including Social Security, pension or retirement funds, annuities, insurance, etc., and agree to promptly pay for charges incurred by the Resident within the time limit established by the current policy of Englewood Manor. * * *

4.    I understand that Englewood Manor has the right to take appropriate legal action to recover unpaid fees and determine if the Resident's contract should be continued if:

a.   Resident has sufficient income and resources, but willfully refuse (sic) to pay for goods and services received.

b.   I have access to the Resident's income and resources, but willfully refuse to pay for goods and services received.

* * *

9. I understand that I may be held personally responsible if I:

a. Misappropriate the Resident's funds;

b. Assist in the transfer of resources or property so that the Resident is unable to meet his or her financial obligations to Englewood Manor Nursing Home;

c. Assist in transfer of resources or property so that the Resident is determined to be ineligible for Medicaid.

{¶ 6} On October 22, 2009, after requesting and receiving additional time to respond, Defendants, by counsel Eric Strawser, answered the complaint. The trial court referred the matter to the Magistrate.

{¶ 7} On January 13, 2010, Liberty filed a motion to compel discovery, attached to which was the affidavit of Adam Armstrong, co-counsel for Liberty. According to Armstrong, discovery requests were twice sent to Strawser, and after repeated attempts at follow-up by Armstrong, Strawser failed to respond. On January 20, 2010, the Magistrate conducted a scheduling conference by telephone, and counsel for Liberty and Strawser participated. On March 9, 2010, the Magistrate sustained Liberty's motion to compel, to which Defendants did not respond, and ordered Defendants to submit completed discovery responses to Liberty within 14 days.

{¶ 8} On March 25, 2010, Liberty filed a motion for sanctions against Defendants, pursuant to Civ.R. 37(B)(2), asserting that Defendants had neither provided discovery responses as ordered nor requested an extension of time to do so. Liberty requested that the Magistrate refuse to allow Defendants to provide untimely responses, and to issue default judgment in favor of Liberty and require Defendants to pay expenses, including attorney fees.

Liberty requested a hearing on the issue of attorney fees and costs.

{¶ 9}    On April 2, 2010, Liberty filed a Motion for Summary Judgment, supported by the affidavits of counsel for Liberty and the affidavit of Kathy Vyrostek, an employee of Liberty, as well as by the unanswered Requests for Admissions propounded to Defendants by Liberty.   Vyrostek averred that Liberty justifiably relied upon the promises of Valentine and Cyphers to pay for the services Liberty rendered to Valentine, and as a result of their failure to pay as promised, Liberty suffered damages in excess of $40,000.00.   Attached to Vyrostek's affidavit is a printout of Valentine's accounts receivable history.   Defendants did not respond. The Magistrate granted the motion on June 4, 2010, and it set the matter for a July 9, 2010 damages hearing.   Liberty appeared at the hearing and presented the testimony of Charlene Norman, the business office manager for Liberty.   Neither Defendants nor their counsel appeared at the hearing.

{¶ 10}    After continuances, a hearing date of July 26, 2010 was set on Liberty's motion for sanctions.   Liberty appeared and presented the expert testimony of Attorney Brandon Allen, who opined that the work performed by Liberty's counsel and the fees charged were reasonable and necessary.   Neither Defendants nor their counsel appeared at the hearing.

{¶ 11}    On September 23, 2010, the Magistrate issued a Decision regarding Liberty's motion for sanctions and the damages due to Liberty.   The Magistrate noted that as a result of Defendants' failure to respond to Liberty's requests for admissions, each of them were deemed admitted.   Since Liberty's motion was based largely upon those admissions, the Magistrate enumerated them in her decision.   Regarding Valentine, the Magistrate noted in part that she admitted that the Agreement and Authorizations are enforceable contracts against

her; that she failed to pay Liberty for room, board, services and charges; that Valentine transferred the Wegner Road property to O'Neal with the actual intent to hinder, delay or defraud Liberty; that Valentine did not retain possession or control of the property; that Valentine transferred her interest in the property to O'Neal pursuant to the land installment contract shortly before Valentine incurred a substantial debt to Liberty; that Valentine transferred the property shortly after she incurred a substantial debt to Liberty[1]; that O'Neal is Valentine's relative; that Valentine did not receive reasonably equivalent value in exchange for the property; that Valentine's debt exceeds the value of her assets; that the property is substantially all of Valentine's assets; and that Valentine should have reasonably believed that she would incur debt beyond her ability to pay at the time of the transfer of the property.

{¶ 12} Regarding Cyphers, the Magistrate noted in part that she admitted that she executed the Agreement and Authorizations as Responsible Party; that the Agreement and Authorizations governed Valentine's admission at Liberty; that the Agreement and Authorizations are enforceable contracts against Cyphers; that Cyphers failed to pay for room, board, services and charges for Valentine; that Cyphers had custody and control over Valentine's assets and did not use them to pay Valentine's expenses but for Cyphers' personal benefit; that Cyphers participated in the transfer of the property to O'Neal with the actual intent to hinder, delay or defraud Liberty; that Cyphers is related to Valentine; and that Cyphers did not provide reasonably equivalent value to Valentine in exchange for Cyphers' use of Valentine's assets for Cyphers' personal benefit. Regarding O'Neal, the Magistrate noted in part that she admitted that she is Valentine's relative, and that Valentine did not

---

[1] The magistrate noted that this admission contradicts the preceding admission and further noted that she simply reiterated all admissions.

receive a reasonably equivalent value in exchange for the property

{¶ 13} Regarding Liberty's motion for sanctions, the Magistrate noted that its entry of summary judgment in favor of Liberty rendered moot Liberty's request for an order refusing to allow Defendants to untimely oppose Liberty's claims and to grant default judgment in favor of Liberty. The Magistrate then concluded that Liberty was entitled to an award of $930.00 in attorney fees against all Defendants and Strawser, jointly and severally.

{¶ 14} Regarding damages for summary judgment, on the breach of contract claim, the Magistrate found that Liberty proved by a preponderance of the evidence that Valentine, and Cyphers, in her capacity as Valentine's Responsible Party, were in breach of contract and that Liberty was entitled to judgment in the amount of $40,027.30. Regarding Valentine, the Magistrate determined that Liberty was entitled to judgment in the amount of $40,027.30. Regarding Cyphers, the Magistrate further found that the Agreement "limits the *contractual* liability of Ms. Cyphers, who signed as the 'Responsible Party.'" According to the Magistrate, however, Cyphers agreed to be personally liable under certain circumstances, pursuant to Section (C)(9) of the Authorizations. The Magistrate determined that Liberty was entitled to judgment against Cyphers in the amount of $40,027.30. According to the Magistrate, Valentine and Cyphers were jointly and severally liable for that amount.

{¶ 15} On the unjust enrichment/quasi contract claim, the Magistrate determined that, since a contract for the provision of services existed between Liberty and Valentine, Liberty was not entitled to damages on this claim. On Liberty's claim for promissory estoppel, the Magistrate concluded that Liberty was not entitled to an additional award of damages, since it was already determined that both Valentine and Cyphers were liable for breach of contract. Regarding Liberty's claim on account, the Magistrate found that claim to

be duplicative of the claim for breach of contract such that additional damages were inappropriate.

**{¶ 16}** In addressing the fraudulent transfer claim, the Magistrate reviewed the Ohio Uniform Fraudulent Transfer Act, R.C. 1336.01 et seq., and concluded that, based upon Defendants' admissions, as well as the award of summary judgment on the issue of liability, "it is established as a matter of law that the transfer was fraudulent." The Magistrate noted however, that a monetary award against O'Neal was inappropriate, since she is not in privity of contract with Liberty nor liable under any other theory. The Magistrate also found that neither Cyphers or Stewart was sold or received the property. The Magistrate accordingly found, "although they may have had knowledge of and/or encouraged the fraudulent transfer, this is not enough to create personal liability" to Liberty. The Magistrate further concluded that Defendants were enjoined from further disposition of the Wegner Road property, and that "O'Neal holds the property in constructive trust for the benefit" of Liberty "to the extent of Defendants' collective liability to Liberty." The Magistrate concluded that Liberty "may levy execution on the Property or its proceeds in accordance with Chapter 2329 of the Revised Code, to the extent of Defendants' monetary liability" to Liberty.

**{¶ 17}** The Magistrate next concluded that punitive damages against Valentine were appropriate, since Liberty established that she transferred the Wegner Road property to O'Neal "with the intent to hinder, delay or defraud Liberty." Accordingly, the Magistrate determined, Liberty established malice on the part of Valentine. Since the property represented substantially all of Valentine's assets, the Magistrate found that a small award of punitive damages would likely deter such conduct by Valentine in the future. The Magistrate awarded punitive damages in the amount of $4000.00 against Valentine.

**{¶ 18}**   Finally, regarding attorney fees, after considering Liberty's evidence and the factors set forth in Rule 1.5, the Magistrate concluded that Liberty was entitled to "an attorney fee award of $2460.00 (less the $930.00 awarded pursuant to the Motion for Sanctions) against Defendant Valentine."   The Magistrate also considered R.C. 1343.03 and awarded Liberty prejudgment and post judgment interest at the statutory rate.

**{¶ 19}**   Defendants did not object to the Magistrate's decision, and it was adopted by the trial court on October 15, 2010.

**{¶ 20}**   On November 12, 2010, Defendants filed a Notice of Substitution of Counsel, which provides in part, "[d]ue to prior counsel, Eric Strawser's, failure to defend this action and his cessation of any communication whatsoever, Defendants have terminated his representation."

**{¶ 21}**   Also on November 12, 2010, Defendants filed their "Motion for Civ.R. 60(B) Relief from Judgment & Request for Hearing."   Therein, Defendants asserted that they have meritorious defenses to present to the trial court.   Regarding the breach of contract claim, Defendants asserted that Cyphers, as Valentine's Responsible Party, by the terms of the Agreement, was not personally responsible for Valentine's outstanding debt.   Regarding the fraudulent transfer claim, Defendants asserted that the transfer preceded a stroke suffered by Valentine, on May 30, 2008, which necessitated her move to Liberty.   According to Defendants, the transfer to O'Neal was accomplished by a land contract, which was executed on April 11, 2008, "for a reasonable amount in relation to the fair market value of the property." Defendants further asserted that Valentine received "fair consideration." Defendants asserted that Valentine was admitted to Liberty on June 5, 2008.   Defendants further asserted that Valentine could not have known that she would suffer a stroke and need

Liberty's services, or that she would owe a debt to Liberty. Defendants asserted that Valentine's funds were not misappropriated.

{¶ 22} Additionally, Defendants asserted that their motion for relief from judgment was made within a reasonable time, namely less than a month after the trial court's final judgment.

{¶ 23} According to Defendants, they were entitled to relief from judgment pursuant to Civ.R. 60(B)(5) for two reasons. First, they asserted that after Valentine's death, on May 2, 2010, Strawser failed to file a suggestion of death and open an estate to defend Liberty's claims. Since the court's judgment was not entered against Valentine's estate, Defendants argued that "the judgment is likely not valid and enforceable." Second, Defendants asserted that they were entitled to relief pursuant to Civ.R. 60(B)(5) because their failure to respond to pleadings and appear in court was due to the gross negligence and blatant misconduct of Strawser.

{¶ 24} Multiple exhibits are attached to Defendants' motion for relief. Exhibit A is a portion of Strawser's engagement letter and fee agreement, addressed to Valentine and dated June 30, 2008, which provides in part, "Upon reviewing the file, my legal opinion is that we can obtain Medicaid benefits in order to pay the high cost of nursing home (sic) by September 1, 2008." Strawser's letterhead states, under his name, "Practice Limited to Elder Law."

{¶ 25} Attached as Exhibit B is email correspondence between Strawser and Stewart. In a message dated September 14, 2009, Strawser advised Stewart as follows:

> Sheila,
>
> I have received the Complaint and will be preparing an
>
> answer this week. This is not uncommon for

them to sue family members. We will respond indicating where your mother's funds were distributed and demonstrating that the land contract was not initiated for a bad purpose. [T]his is clear from the records as no one in the family benefitted from this contract.

The nursing home will likely be able to get a judgment against your mother but they can only collect from her estate at death (which there is no estate) and from the ACT-52.

It is highly unlikely they can go after your assets or those of your sisters.

I will send a draft of the response to you as soon as it is prepared.

Very truly yours,

Eric J. Strawser

{¶ 26} Exhibit C contains more email correspondence. On August 10, 2010, Stewart sent "Kelly" an email at the following email address: eric@strawserlaw.com. There is no text in the body of the message, but the subject line provides: "Kelly, please get back to us on this case!!!!!! We need to know what happen[ed] in court." On the same day, "Kelly" responded from the above address as follows: "The hearing was postponed by the Judge so we are awaiting our next date." Also on the same day, Sheila then replied: "Thanks Kelly - how do you think things are going with the case?" Sheila then received an unsigned response from eric@strawserlaw.com as follows: "We are attempting to settle with a mutual negotiation rather than a court hearing. I am gathering more information for the Attorney

today and will email you this afternoon. Thank you."

{¶ 27} On September 28, 2010, Stewart sent "Kelly" an email that provides, "I received this in the mail and I am not sure what they want could you help me?" Later on the same day, "Kelly" responded: "This is a basic document all Medicaid recipients receive. We have a standard form letter to the Atty General's office. As far as the decision, it was decided to be placed with the Magistrate rather than the court. We missed no hearings. We have not received anything. I will follow up in the morning and call you at work."

{¶ 28} Exhibit D is an email, dated October 5, 2010, from Cyphers to the above email address that provides: "I called and left you a message to call me and I am emailing you too. Please give me a call by noon tomorrow at the latest, I need to know the status of our case."

{¶ 29} Exhibit E is a letter, sent by certified mail, from Cyphers and Stewart, addressed to Strawser and dated October 15, 2010, along with a copy of the Judgment Entry Adopting Magistrate's Decision. The letter provides as follows:

> Enclosed is a Judgment against me entered against us due to your failure to respond to discovery. Also, you failed to intervene after we called, email[ed] and sent a letter to your office. Your secretary, Kelly, said that you would review the Magistrate's Decision and you would get back to us. You did not. Your repeated failures caused the judge to adopt the Magistrate's Decision, which is enclosed. You have 30 days to appeal.
>
> I must know if you will correct this serious problem immediately. If I do not hear back from you by October 25, 2010, I will be forced to retain another attorney to seek action against you, including but not limited to a full

refund of your retainer.

We trusted you to help us, not create a bigger problem.  I hope you will help us.

**{¶ 30}**  Exhibit F is a letter from current counsel for Defendants, dated November 4, 2010, to Strawser, along with a copy of Exhibit D.   The letter provides in part:

I have been contacted by Karen Cyphers and Sheila Stewart regarding the enclosed letter.  Please call me before the end of business tomorrow, Friday, November 5, 2010.  I hope that you will resolve this issue and continue representation.  If I do not hear from you, I will be forced to accept representation Monday for Ms. Cyphers and Ms. Stewart since your silence and continued inaction will cause irreparable harm to your clients.

**{¶ 31}**  Liberty opposed Defendants' motion on December 7, 2010.  According to Liberty, "Defendants failed to come forward with specific operative facts demonstrating they have a meritorious defense to Liberty's breach of contract or fraudulent transfer claims." Although Liberty initially stated that Defendants were not required to support their motion with evidentiary materials, it later also argued that Defendants' motion failed because Defendants merely asserted "blanket statements without * * * evidentiary support."  Liberty additionally argued, "any alleged misconduct of Defendants' attorney is imputed to Defendants and therefore, they cannot avoid judgment merely by blaming the lawyer they selected and retained.   Any relief Defendants seek lies with a malpractice action against their attorney."

**{¶ 32}**  Defendants filed a reply in support of their motion on December 10, 2010. In response to Liberty's assertion that the "blanket statements" in their motion lacked

"evidentiary support," they argued that they were not required by Civ.R. 60(B) or Ohio Supreme Court precedent to present evidentiary materials. Attached to the reply is the affidavit of Kathy Vyrostek, Liberty's administrator, as well as a printout of Valentine's accounts receivable history.

{¶ 33} Also attached are email exchanges that occurred on October 13, 2008. The first, from Stewart to Strawser, provides:

Eric we just received this notice from the nursing home please let us know what is going on. They say you missed a meeting on August 11, 2008 and medicare closed out the claim. I know you said they would [deny] the first one but I did not know that they would ask Mom to leave. Please get back to us. I have sent you at least 4 emails and at least 3 voice message[s] on Friday.

{¶ 34} Strawser responded as follows:

Sheila,

I apologize. We were unaware of our phone problem on Friday and we are working to have it fixed today. I had Leigh Ann call the nursing home today from home to let them know that we are handling the re-app. We have a new pending number and will have the meeting before Friday. The nursing home knows that they cannot remove a bed for a person with a pending Medicaid number. I will let you know tomorrow the date when I will be going in. As you know, we wanted the first rejection from Medicaid and we are right on pace to have it approved this time. Again, I apologize for the phone issues and we've been assured our toll-free number will be running

properly by tomorrow morning.

Eric J. Strawser, Esq.

**{¶ 35}** Stewart then advised Strawser: "Eric - Thanks for getting back to me we were getting a little concerned. We had to pay the nursing home 215 a day for the days mom was in the hospital will [we] still have to do that if she is approved for Medicaid?"

**{¶ 36}** Strawser responded: "No, she will only be responsible for paying her income to the nursing home. We will get this amount reimbursed by Medicaid."

**{¶ 37}** Stewart then advised: "The nursing home told us if we did not come in and pay mom was going to lose her bed. They said you missed a[n] appointment in [A]ugust and the claim was closed out. We were in a panic Friday because we had no idea what to do."

**{¶ 38}** The trial court issued its Decision on Defendants' motion on June 6, 2011, without a hearing. The court initially found that "the Entry granting summary judgment was incorporated into the Magistrate's Decision that is now the comprehensive judgment of this Court via the Adoption Entry filed on October 15, 2010, and Defendant's *Motion for Relief* will be considered accordingly." The court then noted that the timeliness of Defendants' *Motion for Relief* is not in dispute, and it proceeded to address Defendants' arguments regarding their meritorious defenses and their arguments under Civ.R. 60(B)(5) separately.

**{¶ 39}** With respect to Liberty's claim for breach of contract, the trial court noted that Defendants "only advance an argument as to Defendant Cyphers." Regarding Cyphers' liability the court considered the following language in Defendants' reply in support of their motion for relief as follows:

* * * Cyphers paid to Plaintiff all income Valentine received from

social security and payment on the land contract. Cyphers' determination not

to pay the balance out of her own pocket was made with the understanding that such funds would be paid by Medicaid. * * * Thus, this expectation that any unpaid funds would be paid by Medicaid provides Defendants with a justifiable rationale, which precludes their conduct from being characterized as "willful." Therefore, under the Authorizations, Defendants can assert facts and circumstances that demonstrate a prima facie showing of a meritorious defense to Plaintiff's breach of contract claim.

{¶ 40} The court then noted, "[t]o the extent plaintiff argues that judgment should not be vacated because Cyphers is liable under the agreement , the Court finds this to be tantamount to a motion for reconsideration. The larger issue before the Court is whether the current judgment, and its bases, should be vacated." According to the court, in adopting the decision of the Magistrate, it "has already ruled that Cyphers is not liable pursuant to the Agreement based on Section III(C)." The court found "its original reasoning sound - that the plain language stating that the Responsible Party is not liable limits Cyphers' contractual liability * * *." The court further noted, "to the extent that indemnity language conflicts" with the section defining Responsible Party as the person "who * * * guarantees payment", the language defining Responsible Party "is not controlling." Further, the court noted that the definition of Responsible Party "only makes Cyphers responsible for payment *from* Valentine's assets. To the extent that Plaintiff would argue that the word 'guarantee' equates to a personal guarantee rendering Cyphers individually/personally liable to Plaintiff, the Court finds this constitutes an ambiguity that should be construed against the drafter." The court concluded, pursuant to the Agreement, that "the Responsible Party is only obligated to ensure payment from the resident's assets over which the Responsible Party has legal

access, custody and control."

{¶ 41}   The court next considered the Authorizations and determined that Cyphers "has set forth sufficient operative facts that establish a meritorious defense to liability * * *." The court reasoned as follows:

> The finding of liability under Authorization Section (C)(9) necessarily had to be based on a finding of the existence of one of the enumerated conditions in (C)(9)(a)-(c), which in turn was only based on Cyphers' admissions, which the Court noted were vague to begin with. * * * Specifically, the basis for personal liability under (C)(9) were the admissions that she utilized Valentine's assets for her own benefit *instead* of paying Plaintiff for services rendered. When read in the context of the Authorizations language, the Court interprets those admissions to mean that

Valentine actually had sufficient assets, and * * *Cyphers used those assets for her own benefit (or otherwise transferred or depleted those assets) to the detriment of Plaintiff (i.e. that she actually had the *means* to pay Plaintiff *from* Valentine's assets.) In arguing that Cyphers did not "willfully refuse to pay," Defendants have asserted that Cyphers paid the entirety of Valentine's available assets and resources to Plaintiff, but that it simply wasn't enough. If this is true, then the conditions of Authorizations Sections (C)(9)(a)-(c) have not been met, and the basis for the Court's finding that Cyphers is personally liable is no longer sound. The fact that Defendants "admitted" that they did not pay

a portion of Plaintiff's bill is irrelevant, because Defendants have represented that all of Valentine's asserts (sic) were paid to Plaintiff (albeit insufficient), and because Cyphers was not personally liable absent one of the above circumstances. Therefore, the court finds Defendant Cyphers has alleged specific operative facts establishing a meritorious defense to personal liability.

Interestingly, Defendant Cyphers goes on to make an argument that her affirmative decision to not pay Plaintiff out of her own pocket was the result of the justifiable belief that Medicaid was going to pay the balance. * * * The Agreement obligated Cyphers, as "Responsible Party," only to guarantee payment from Valentine's assets. * * * The same is true of Authorizations Sections (C)(3), (4), and (9). As stated above, pursuant to Section (C)(9) Cyphers would not be personally liable unless she misappropriated those funds. Sections (C)(3) and (4) only apply to the extent the Responsible Party "*has access to the Resident's income and resources, but willfully refuse to pay for goods and services received.*" * * * Of course,

Cyphers had a personal incentive to pay out of her own pocket if Plaintiff nursing home was threatening to expel her mother for nonpayment. However, whether or not she justifiably believed Medicaid would cover the bill has no bearing on whether she is personally liable absent one of the conditions listed.

{¶ 42} Regarding liability on the part of Valentine or her estate on the breach of contract claim, the court considered Defendants' assertion that they are entitled to relief pursuant to Civ.R. 60(B)(5) because the judgment against Valentine is not valid, and the court determined Defendants' "argument properly goes toward the requirement of establishing a meritorious defense." The court further determined, whether "judgment is entered against Valentine or her estate is substituted and said judgment goes against her estate, the basis for the judgment remains unaffected, and Defendants have not offered any legal authority for their proposition that the judgment is 'likely not valid.'" Further, the court found that Defendants did not argue that either Valentine (or her estate) have a meritorious defense to liability. Accordingly, the court concluded that Valentine (or her estate) has not presented a meritorious defense to liability on Liberty's breach of contract claim.

{¶ 43} Regarding the fraudulent conveyance claim against all Defendants, the court reiterated "the fact that the transfer was fraudulent was not enough to render Stewart, Cyphers, or O'Neal *personally liable* to Plaintiff." The court then found Defendants' arguments persuasive as follows:

> First, the judgment on Plaintiff's fraudulent conveyance claim is predicated on the admissions that established that the subject property was not sold for reasonably equivalent value, and the Court finds that Defendants'

assertion that the property was sold for fair consideration, if true, would served (sic) as a meritorious defense to Plaintiff's claims of fraudulent conveyance. Furthermore, if the subject property were sold for reasonably equivalent value, the issues of whether Defendants were about to engage in a business transaction or whether Defendants reasonably should have believed Valentine's debts would increase are irrelevant. Nevertheless, the Court finds Plaintiff's arguments persuasive that, even if reasonably equivalent value was not received, old age does not automatically mean that an individual should reasonably believe he or she will incur medical expenses beyond his or her ability to pay.

**{¶ 44}** The court then considered the list of factors set forth in R.C. 1336.04(B) to determine Defendants' actual intent to hinder, delay, or defraud Liberty. According to the trial court, the admissions Liberty relied upon "arguably establish" six of the 11 factors. Specifically, the court found the following R.C. 1336.04(B) factors relevant to actual intent: (1) "whether the transfer or obligation was to an insider;" (2) "whether the debtor retained possession or control of the property transferred after the transfer;"[2] (5) "whether the transfer was of substantially all of the assets of the debtor;" (8) "whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;" (9) "whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;" and (10)

---

[2]The court noted that the fact that Valentine admitted that she did not retain possession and control of the property "goes in her favor on Plaintiff's claim pursuant to R.C. 1336.04(A)(1)."

"whether the transfer occurred shortly before or shortly after a substantial debt was incurred."

**{¶ 45}** The court found, however, "that these badges of fraud are mooted or rebutted in light of Defendants' assertion that the property was sold for fair consideration." According to the court, if "it is true that the subject property was sold for reasonably equivalent value, the Court fails to see how Plaintiff was hindered, delayed, or defrauded. If anything, liquidating real property would work to Plaintiff's advantage. Therefore, the Court finds Defendants have set forth a meritorious defense" to Liberty's fraudulent conveyance claim.

**{¶ 46}** Regarding the appropriate application of Civ.R. 60(B)(5), and the imputation of an attorney's conduct to the client, the court reviewed the facts herein and the Ohio Supreme Court's holding in *GTE Auto. Electric, Inc. v. ARC Ind., Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), and certain of its progeny. The court then analyzed this Court's decision in *Whitt v. Bennett*, 82 Ohio App.3d 792, 797, 613 N.E.2d 667 (2d Dist. 1992), in which this Court found that the attorney at issue abandoned his representation of his clients and that the trial court erred in determining that "the conduct of an attorney must be imputed to his client for purposes of Civ.R. 60(B)." This Court reversed and remanded the matter for a determination of whether sufficient grounds for relief existed. After reviewing *Whitt*, the trial court concluded, "determining whether relief should be granted under 60(B)(5) first requires distinguishing between *types* of inexcusable neglect. The inexcusable neglect must be different from the simple lapses and technical failures contemplated by 60(B)(1) such that it must be extraordinary in nature * * * ." Finally, the trial court noted, "determining whether relief should be granted under 60(B)(5) hinges on the degree to which fault should be imputed

to the client, if at all."

{¶ 47} The trial court further concluded that, herein, "the operative facts demonstrate attorney neglect that goes beyond the level of abandonment and amounts to affirmative misdirection," such that Civ.R. 60(B)(5) is properly applied to Defendants' motion for relief. The court specifically noted that Strawser failed to:

1.  respond to discovery requests;

2.  respond to Plaintiff's Motion [to] Compel Discovery;

3.   * * *respond to Plaintiff's counsel regarding overdue discovery;

4.  respond to the Motion for Sanctions Against Defendants;

5.  obey the Magistrate's Order Compelling Discovery;

6.  respond to Plaintiff's Motion for Summary Judgment;

7.  file a notice of suggestion of death after Eva Valentine passed on May 2, 2010;

8.  appear at any hearings on discovery, sanctions, and the damages hearing in July of this year;

9. notify defendants of any time, date and place of any hearing regarding the motion to compel or the motion for summary judgment;

10.  file any written responses to Plaintiff's motions;

11.  file any objections to the Magistrate's Decision;

12.   do anything after this Honorable Court entered final judgment that   included attorneys fees to the Plaintiff, punitive damages and pre-judgment interest and post-judgment interest

against the Defendants.

**{¶ 48}** The court next concluded that relief from judgment was warranted, in reliance upon the email communications set forth above, which "demonstrate that the Defendants were actually misled to believe that their interests were being properly handled, which, despite Defendants' diligence, resulted in judgment against them, including sanctions." The court further concluded that Defendants' emails established that they were diligent in their attempts to be involved and remain informed about the matter. Upon being lied to by Strawser, their "ability to take appropriate action or protect themselves from further neglect was displaced."

**{¶ 49}** The trial court vacated the judgment awarding sanctions as to Valentine (or her estate), Stewart, Cyphers, and O'Neal. Since Valentine (or her estate) did not present a meritorious defense to Liberty's breach of contract claim, the court overruled Defendants' motion for relief to the extent it sought to vacate the judgment against Valentine (or her estate). The court, however, vacated the judgment awarding damages on Liberty's breach of contract claim against Cyphers. The court also vacated the judgment on Liberty's claim of fraudulent conveyance against all Defendants, as well as the judgment awarding punitive damages against Valentine (or her estate). The court further vacated the judgment granting a constructive trust in favor of Liberty to the extent of Defendants' collective liability. Finally, the court vacated the judgment granting Liberty the right to levy execution on the Wegner Road property.

**{¶ 50}** Liberty asserts three assignments of error herein, the first of which is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING CYPHERS PLED SUFFICIENT FACTS TO SUPPORT A MERITORIOUS DEFENSE TO LIBERTY'S

BREACH OF CONTRACT CLAIM."

{¶ 51}  According to Liberty, Defendants failed to provide evidentiary materials to support Cyphers' allegation that all of Valentine's assets were paid to Liberty.  Liberty further asserts that Cyphers was required "to proffer evidentiary materials demonstrating the existence of a genuine issue of material fact, upon which she would rely in responding to the motion for summary judgment," and the trial court "abused its discretion in holding Cyphers' unsworn, bare allegation that she paid all of Valentine's assets to Liberty, was sufficient to establish a meritorious defense to Liberty's breach of contract claim."   Liberty relies in part upon *Cincinnati Ins. Co. v. Schaub*, 2d Dist. Montgomery No. 22419, 2008-Ohio-4729, as well as Montgomery County Court of Common Pleas Local Rule 2.05.  Liberty further asserts that, since its motion for summary judgment was unopposed, Defendants were required to proffer evidentiary materials demonstrating the existence of a genuine issue of material fact, in reliance upon *G & S Manufacturing v. Lagos & Lagos,* 2d Dist. Clark No. 2005 CA 72, 2007-Ohio-1507.   Further, Liberty asserts that Cyphers' reference to Valentine's accounts receivable history, attached to Defendants' Reply in support of their motion for relief from judgment, does not satisfy Defendants' burden for two reasons.   First, Liberty asserts that the history merely demonstrates that payments were made to Liberty, not that all of Valentine's assets were paid to Liberty.   Second, Cyphers did not present evidence to rebut the evidence that all of Valentine's assets were not paid to Liberty.

{¶ 52}  In response, Defendants argue that they were not required to submit "tangible evidentiary material" establishing that Cyphers had a meritorious defense. They further assert that the evidence before the trial court was sufficient to show that Cyphers had a meritorious defense to Liberty's breach of contract claim.

**{¶ 53}** Civ.R. 60(B) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (5) any other reason justifying relief from the judgment. The motion must be made within a reasonable time, and for reason[] (1) * * * not more than one year after the judgment, order or proceeding was entered or taken. * * * .

**{¶ 54}** We note that "Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of justice may be served." *Kay v. Marc Glassman, Inc.,* 76 Ohio St.3d 18, 1996-Ohio-430, 665 N.E.2d 1102. "'Civ.R. 60(B) represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done.' (Citation omitted)." *Aurora Loan Servs., L.L.C. v. Wilcox*, 2d Dist. Miami No. 2009 CA 9, 2009-Ohio-4577, ¶ 12. To prevail on a motion pursuant to Civ.R. 60(B), a movant must establish that: (1) he has a meritorious defense or claim to present if relief is granted; (2) he is entitled to relief pursuant to 60(B)(1)-(5); and (3) the motion was made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment or proceeding was entered or taken. *GTE Automatic Elec.,* at 150-51. All three requirements must be met. Id., at 151.

**{¶ 55}** "In order to establish a meritorious claim or defense under Civ.R. 60(B), the movant is required to allege a meritorious claim or defense, not to prove that she will prevail on such claim or defense." *Wilcox*, ¶ 14. This Court has determined that a "'meritorious defense' means a defense 'going to the merit, substance, or essentials of the case.' * * * Relief from a final judgment should not be granted unless the party seeking such relief makes at least

a prima facie showing that the ends of justice will be better served by setting the judgment aside." Id. This Court has held, "the motion and/or affidavit submitted in support of the motion must set out operative facts which, if true, constitute a prima facie showing of the claim or defense concerned. A prima facie showing is one which is '[s]ufficient to establish a fact or raise a presumption unless disapproved or rebutted.' (Citation omitted)." *Portfolio Recovery Associates v. Thacker*, 2d Dist. Clark No. 2008 CA 119, 2009-Ohio-4406, ¶ 41. This Court has further found that "[b]road, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief from judgment. (Citations omitted)." *Wilcox*, id.

**{¶ 56}** "Where the movant is seeking relief from the granting of a motion for summary judgment to which he did not respond, 'the party seeking relief must show that it could make an adequate response, demonstrating the existence of a genuine issue of material fact, pursuant to *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, if it had the opportunity to respond.' (Citations omitted)." *Savage v. Delamore Elizabeth Place*, 2d Dist. Montgomery No. 23147, 2009-Ohio-2772, ¶ 24.

**{¶ 57}** "Our review of the trial court's judgment is a narrow one. 'It is within the sound discretion of the trial court to decide whether to grant a motion for relief from judgment, and in the absence of a clear showing of abuse of discretion, the discretion of the trial court will not be disturbed on appeal.' (Citation omitted)." *Gorby & Assoc.*, *LLC v. McCarty*, 2d Dist. Clark No. 2010 CA 71, 2011-Ohio-1983, ¶ 44. As the Supteme Court of Ohio has previously noted:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is

to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision.   It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.  *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 58}**   In *Schaub*, 2008-Ohio-4729, to which Liberty directs our attention, this Court quoted *East Ohio Gas Co. v. Walker*, 59 Ohio App.2d 219, 394 N.E.2d 348 (8th Dist. 1978) as follows regarding the burden carried by a Civ.R. 60(B) movant:

"The allegation of operative facts required in order to prevail upon a motion for relief from judgment pursuant to Civ.R. 60(B) must be of such evidentiary quality as affidavits, depositions, answers to interrogatories, written admissions, written stipulations, or other sworn testimony.   Unsworn allegations of operative facts contained in a motion for relief from judgment filed under Civ.R. 60(B) or in a brief attached to the motion are not sufficient evidence upon which to grant a motion to vacate judgment."

In *Schaub,* the trial court's denial of Civ.R. 60(B) relief from summary judgment, based upon excusable neglect,   was affirmed where the only evidence in support of relief was Schaub's affidavit, in which he did not aver that he had a meritorious defense to allegations of negligence and negligence per se, but rather "simply stated that he was incarcerated and was

not represented by a guardian at the time summary judgment was rendered."   Id., ¶ 46.

{¶ 59}   The *Walker* court noted the contrary position taken by the Tenth District in *Matson v. Marks*, 32 Ohio App.2d 319, 291 N.E.2d 491 (10th Dist. 1972).   Therein, the Tenth District determined, "neither the Civil Rules nor the rules of the trial court require the filing of affidavits in support of motions for relief from judgment," and "a party cannot be found in default of presenting such evidence until required to do so either by rule or order of the court." Id., 326-27.   In *Walker*, the existence of Local Rule 11 of the Common Pleas Court of Cuyahoga County was significant to the court's determination regarding the appropriate evidentiary standard for Civ.R. 60(B) relief.   That rule provided:

> The moving party shall serve and file with his motion a brief written statement of reasons in support of the motion and a list of citations of the authorities on which he relies.   If the motion requires the consideration of facts not appearing of record, he shall also serve and file copies of all affidavits, depositions, photographs or documentary evidence he desires to present in support of the motion.

{¶ 60}   In a footnote, the *Walker* court noted, the "existence of Local Rule 11 makes our holding herein consistent with [*Matson*] wherein the court held that the submission of affidavits or other evidentiary materials is not required with a motion for relief from judgment 'until required to do so either by rule or order of the trial court.'" Id.

{¶ 61} According to Liberty, Local Rule 2.05 of the Common Pleas Court of Montgomery County similarly "provides notice that proper evidentiary materials are required when a Civ.R. 60(B) motion requires consideration of facts not appearing of record."   Local Rule 2.05 provides:

II.  MOTIONS

    A.  Moving Parties

    1.  All moving parties shall file and serve their motions with the following

        * * *

    c.  Copies of all photographs or documentary evidence that will be used in support of the motion if the motion requires consideration of facts that do not appear in the record.

We conclude that the Local Rule does not, by its plain language, require parties to submit sworn evidence with their motions.

{¶ 62} Regarding Liberty's reliance upon *G & S Manufacturing*, for the proposition that Defendants were required to submit competent summary judgment evidence to establish a meritorious defense, we note that in *G & S*, this Court relied upon its decision in *Dysert v. State Auto Mutual Ins. Co.*, 2d Dist. Miami  No. 98-CA-46, 1999 WL 23479 (April 23, 1999).  In *Dysert*, this Court noted, specifically citing *Walker*, that "[o]ne court has gone so far as to require evidentiary material, of the type required under Civ.R. 56 for summary judgment purposes, to show that a movant for relief pursuant to Civ.R. 60(B) has a meritorious claim or dissent (sic)."  This Court *"would not necessarily go so far,"* concluding "that demonstration of the existence of a meritorious claim or defense requires a proffer of evidentiary materials upon which the movant would rely in responding to a motion for summary judgment where, as here, the judgment from which relief is sought is a summary judgment rendered without a response having been made to the motion for summary

judgment." (Emphasis added). We do not find that *G & S,* and *Dysert,* mandate the conclusion that competent summary judgment evidence is required in the context of a Civ.R. 60(B) motion.

{¶ 63} Most significantly, we note that the Supreme Court of Ohio has specifically determined:

It is true that neither Civ.R. 60(B) itself nor any decision from this court has required the movant to submit evidence, in the form of affidavits or otherwise, in support of the motion, although such evidence is certainly advisable in most cases. But the least that can be required of the movant is to enlighten the court as to why relief should be granted. The burden is upon the movant to demonstrate that the interests of justice demand the setting aside of a judgment normally accorded finality. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20-21, 520 N.E.2d 564 (1988).

{¶ 64} In *Rose Chevrolet,* the movant sought relief from judgment pursuant to Civ.R. 60(B)(1) and (5), after default judgment was entered against her and she did not file evidentiary materials with her motion. The Supreme Court noted that the "specific issue posed involve[d] the quantum of evidence necessary to prove entitlement to relief on the grounds enumerated in Civ.R. 60(B)(1)." Id., at 19. The argument provided in support of Adams' motion provided in its entirety, "'Pursuant to Civ.R. 60(B), counsel for the defendant herein makes the above request [for relief from judgment] based upon inadvertence and excusable neglect. Counsel for defendant had previously prepared an answer (attached, as Exhibit A) for filing in the above matter. This request is made in good faith and not for purposes of delay.'" Id., at 18. The Court concluded, "where the movant

alleges inadvertence and excusable neglect as grounds for relief from judgment under Civ.R. 60(B)(1) but does not set forth any operative facts to assist the trial court in determining whether such grounds exist, the court does not abuse its discretion in denying the motion for relief from judgment." Id., at 21.

{¶ 65} We finally note this Court's decision in *Justice v. Sears, Roebuck & Co.,* 2d Dist. Montgomery No. 8658, 1984 WL 3842 (Sept. 4, 1984), wherein this Court considered the holding in *Matson* in analyzing the burden on a Civ.R. 60(B) movant to establish excusable neglect, and it further relied upon *Adomeit v. Baltimore,* 39 Ohio App.2d 97, 103, 316 N.E.2d 469 (8th Dist. 1974), as follows:

> Since the Civil Rules are silent as to the exact procedure to be followed some movants do not understand what they should file with the court. Specifically, the Civil Rules only require the filing of a motion under Civl Rule 7(B), and do not require that movants file an affidavit or other evidence with the motion. * * * However, the rules do not require that the trial court grant a hearing on every motion for relief from judgment under Civil Rule 60(B).

> Even though there is no requirement that the movant submit an affidavit or other material with his motion, because he has the burden of proof and is not automatically entitled to a hearing, good legal practice dictates that the movant must do all that he can to present allegations of operative facts to demonstrate that he is filing his motion within a reasonable period of time; that he is entitled to relief for one of the grounds specified in Civil Rule 60(B)(1) through (5); and that he has a valid defense.

> * * *

The rigid procedural requirements of Civil Rule 56 regarding the documents and other material the parties should submit in support of and in opposition to a motion for summary judgment are excellent *guides* and a commendable procedure to be followed in seeking relief or in opposing relief under Civil Rule 60(B). (emphasis added).

**{¶ 66}** Pursuant to *Rose Chevrolet*, and pursuant to the plain language of Civ.R. 60(B), a remedial rule we construe liberally to best serve the ends of justice, we cannot conclude that in this factual scenario Defendants were required to submit competent summary judgment evidence to establish Cyphers' meritorious defense. This conclusion is supported by the distinction between the ends of a motion for summary judgment and a motion for relief from judgment; pursuant to Civ.R. 56(A), a summary judgment movant seeks "to recover upon a claim * * *," while a Civ.R. 60(B) movant "is requesting only that a final judgment be reopened and not that it be reversed as well." Klein, Darling, *Civil Practice*, Section 60:24, 734 (2004). Further, although we concede it would have been advisable to include affidavits in support of their motion, the Montgomery County Local Rule does not require sworn evidence in the form of affidavits and depositions, as did the local rule at issue in *Walker*. We additionally note that in *Schaub*, while this Court recited the language upon which Liberty relies, that language was not material to the holding therein.

**{¶ 67}** As noted above, the trial court found that Cyphers "alleged specific operative facts establishing a meritorious defense to personal liability," namely that she paid the entirety of Valentine's available assets and resources to Liberty, "but that it simply wasn't enough." The Defendants' expectation that Liberty would be paid by Medicaid is born out by the documents attached to the motion for relief from judgment and the reply to Liberty's

opposition, namely Strawser's "legal opinion" in the engagement letter dated June 30, 2008, that such benefits could be obtained, and Strawser's assurance via email on October 13, 2010, that "we wanted the first rejection from Medicaid and we are right on pace to have it approved this time," as well as his assurance, regarding the amount of money Stewart paid Liberty, that Valentine "will only be responsible for paying her income to the nursing home. We will get this amount reimbursed by Medicaid." We conclude, as did the trial court, that Cyphers alleged a meritorious defense going to the merits of Liberty's breach of contract claim.

{¶ 68} Finally, the trial court correctly concluded that by the plain language of the Agreement and Authorizations, set forth above, Cyphers, as Valentine's Responsible Party, was not personally liable. We conclude that the record, contrary to Liberty's assertions, does not contain mere broad, conclusory statements but rather sets forth operative facts and documents which, if true, constitute a prima facie showing of Cyphers' meritorious defense to Liberty's breach of contract claim. In other words, Defendants have shown "that the interests of justice demand the setting aside" of summary judgment. *Rose Chevrolet*. Since an abuse of discretion is not demonstrated, Liberty's first assigned error is overruled.

{¶ 69} Liberty's second assigned error is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLEES PLED SUFFICIENT FACTS TO SUPPORT A MERITORIOUS DEFENSE TO LIBERTY'S FRAUDULENT TRANSFER CLAIM."

{¶ 70} Liberty again asserts that Defendants were required to "proffer evidentiary material of the type contemplated by Civ.R. 56 to support their factual allegations." Further, according to Liberty, "Valentine's transfer of the Property for less than reasonably equivalent value establishes she should have reasonably believed she would not be able to pay her debts

as they became due." Liberty directs our attention to *Lifesphere, d.b.a. Maple Knoll Village v. Sahnd*, 179 Ohio App.3d 685, 2008-Ohio-6507, 903 N.E.2d 379 (1st Dist.). Liberty asserts, "sufficient badges of fraud exist to prove actual intent under R.C. 1336.04(A)(1)." Liberty argues: (1) O'Neal is an insider; (2) the property transferred represented substantially all of Valentine's assets; (3) Valentine did not receive reasonably equivalent value in exchange for the property transferred; (4) Valentine became insolvent shortly after transferring the property to O'Neal; and (5) the transfer of the property occurred at or around the time Valentine incurred a substantial debt.

{¶ 71} Defendants initially argue that by asserting the above five arguments regarding the transfer of the property, Liberty necessarily concedes "that Valentine did not retain possession of the property after the transfer, did not conceal the transfer, was not sued or threatened with suit before or when she made the transfer, did not abscond, did not remove or conceal assets, and did not transfer assets of a business to a lienholder."

{¶ 72} Defendants note that Liberty's basis for asserting that O'Neal is a relative of Valentine's are the admissions enumerated by the trial court, and Defendants assert that "in truth, this admission is false." Defendants argue that the transfer of the property did not represent substantially all of Valentine's assets, since she retained an interest in the property by means of the land contract. Defendants assert that Valentine received reasonably equivalent value for the property. Defendants argue that Valentine's interest in the land contract exceeded the amount she owed Liberty, and she was accordingly not insolvent. Finally, Defendants assert that Valentine could not have foreseen that she would suffer a stroke, necessitating her admission to Liberty.

{¶ 73} R.C. 1336.04 provides:

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

{¶ 74} The eleven factors set forth in R.C. 1336.04(B) "are referred to as 'badges of fraud.' We have noted that a plaintiff does not have to show evidence of all the badges of fraud. *Gevedon v Ivey*, 172 Ohio App.3d 567, 876 N.E.2d 604, 2007-Ohio-2970, ¶ 76." *Individual Business Services v. Carmack,* 2d Dist. Montgomery No. 24085, 2011-Ohio-1824, ¶ 50. "'Badges of fraud' are circumstances so frequently attending fraudulent transfers that

the inference of fraud arises from them." *Gevedon*, ¶ 76.

{¶ 75} We note that R.C. 1336.02(A)(1) provides: "A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor as fair valuation." R.C. 1336.02(A)(2) provides: "A debtor who generally is not paying his debts as they become due is presumed to be insolvent."

{¶ 76} As stated above, the trial court found that Defendants asserted a meritorious defense to Liberty's fraudulent transfer claim, namely that Valentine received reasonably equivalent value for the property she transferred to O'Neal. We initially note, again, while it would have been advisable for Defendants to include affidavits in support of their motion for relief from judgment, affidavits, on this record, were not required nor necessary.

{¶ 77} We further note that Liberty's reliance upon *Lifesphere* is misplaced. Therein, Jack Sahnd's mother, who was over 80 years old, gave her home to her son, without compensation, seven months before moving to a geriatric care facility. After her death, her estate could not pay Lifesphere, and the facility brought suit under R.C. 1336.04. The trial court's grant of summary judgment in favor of Lifesphere was affirmed. The First District held that "anyone, of any age, who transfers their major asset *without consideration*, leaving little or no assets, is liable to creditors who shortly thereafter extend credit without knowledge of the transfer." Id., ¶ 18 (emphasis added).

{¶ 78} In their motion for relief from judgment, Defendants asserted that Valentine executed the land contract on April 11, 2008, and that, unlike Sahnd's mother, who received no consideration in exchange for her property, Valentine received "a reasonable amount in relation to the fair market value of the property" such that the property was sold "for fair consideration." We cannot conclude, as Liberty asserts, that the circumstances so frequently

attending fraudulent transfers are demonstrated such that an inference of fraud arises. In other words, the trial court correctly found that the six badges of fraud enumerated in factors (1), (2), (5), (8), (9) and (10), that were "arguably" established by Defendants' admissions, are refuted in light of Defendants' assertion that the property was sold for fair consideration. Finally, we note, even if reasonably equivalent value were not received in the exchange, as the trial court correctly noted, there was no reason for Defendants to believe that Valentine would incur medical bills beyond her ability to pay.

{¶ 79} Finally, as in the first assigned error, we conclude that Defendants asserted more than broad, conclusory statements, and that they set forth operative facts that amount to a prima facie showing that justice will be better served by setting the grant of summary judgment aside. Since the trial court correctly found that Defendants asserted a meritorious defense to Liberty's fraudulent transfer claim, an abuse of discretion is not demonstrated, and Liberty's second assigned error is overruled.

{¶ 80} Liberty's third assigned error is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEES RELIEF FROM JUDGMENT PURSUANT TO CIV.R. 60(B)(5)."

{¶ 81} According to Liberty, "the trial court lacked a sound reasoning process to support its finding [that] Appellees were diligent and that Strawser's actions amounted to [the] extraordinary circumstances" contemplated by Civ.R. 60(B)(5). Liberty asserts that Defendants' remedy is a malpractice action against Strawser. Liberty also asserts that Strawser's conduct should be imputed to Defendants.

{¶ 82} The Ohio Supreme Court has held that "Civ.R. 60(B)(5) is intended as a 'catch-all' provision reflecting the inherent power of a court to relieve a person from the

unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus.

{¶ 83} In *Whitt*, 82 Ohio App.3d 792, upon which the trial court relied, counsel for Bennett served several unanswered requests for discovery on counsel for Whitt, including interrogatories and requests for production of documents. After a motion to compel was filed, the trial court ordered Whitt to provide the requested discovery and execute authorizations for medical records. Counsel for Whitt did not comply with the court's order. Counsel for Bennet filed a motion to dismiss, and counsel for Whitt failed to attend the hearing scheduled by the trial court. The trial court dismissed the matter with prejudice. Id., 794-95.

{¶ 84} This Court noted the rule that Civ.R. 60(B)(5) cannot be used as a substitute for the other specific grounds in Civ.R. 60(B) and further noted, however, that "that requirement does not preclude the use of Civ.R. 60(B)(5) on the basis of operative facts different from and/or in addition to those contemplated by Civ.R. 60(B)(1)." Id., 797. This Court then found as follows:

> The record clearly demonstrates attorney neglect. Civ.R. 60(B)(1) is concerned with "excusable neglect." An attorney's failure to comply with an order compelling discovery when he has discovery materials in his possession and to attend a hearing on a motion to dismiss for failure to comply with that discovery order after proper notice is *in*excusable neglect. Such matters will be found wanting if weighed against the standard of Civ.R. 60(B)(1). However, they are matters different from the simple lapses and technical

failures contemplated in that rule. They are matters of an extraordinary nature, which is the purview of Civ.R. 60(B)(5). *Admomeit v. Baltimore, supra.* Therefore, they are operative facts for relief from judgment pertinent to Civ.R. 60(B)(5) and may be considered for that purpose without violating the rule against substitution of grounds. Id.

After concluding that the trial court erred in holding that the operative facts demonstrated by appellants could not be considered under Civ.R. 60(B)(5), this Court remanded the matter for the trial court's determination as to whether sufficient grounds for relief under Civ.R. 60(B)(5) existed.

{¶ 85} Further, regarding the imputation of attorney conduct to a client, this Court noted as follows:

The requirement has not been extended to the extraordinary circumstances contemplated in Civ.R. 60(B)(5). Upon a review of the facts and circumstances the court may find that the client is responsible for some measure of the failures concerned. However, fault should not automatically be imputed when an attorney has grossly neglected a diligent client's case and misleads the client to believe that his interests are being properly handled. Id., 797-98.

{¶ 86} In contrast to *Whitt*, Liberty directs our attention to the definition of abandonment set forth in *Mayor v. WCI Steel, Inc.,* 11th Dist. Trumbull No. 200-T-0054, 2001 WL 276976 (March 16, 2001). The *Mayor* court determined, "[a]bandonment would occur if the attorney were prohibited from practicing law by a disciplinary committee, or if the attorney refused to respond to communications from his client and failed to perform any work

on behalf of his client, in which case the client would be without scienter." According to Liberty, "Strawser's alleged actions do not meet the definition of abandonment set forth in *Mayor."* Instead, Liberty asserts that Strawser's conduct was akin to that of the attorney in *WM Specialty Mortgage v. Mack*, 5th Dist. Licking No. 2008 CA 00125, 2009-Ohio-2590. Therein, appellants' motion for relief from judgment was based upon "the inaction of their trial attorney in failing to respond to the motion for summary judgment and failing to communicate with his clients," which appellants asserted "evidences gross neglect and abandonment." Id., ¶ 29.

{¶ 87} The Fifth District determined:

* * * the facts in the present case do not demonstrate that the action, or rather inaction, of Appellant's trial counsel in failing to respond to the motion for summary judgment or raising the defense of rescission were extraordinary circumstances to which Civ.R. 60(B)(5) may apply. It is undisputed that Appellants were in default on their mortgage, triggering the foreclosure proceedings. The motion for summary judgment filed by Appellee asserted there was no genuine issue of material fact that Appellants were in default of the loan and entitled to judgment as a matter of law. The trial court, and this Court, agreed Appellee was entitled to judgment as a matter of law. The client's remedy is against the attorney in a suit for malpractice * * *. Id., ¶ 32.

{¶ 88} In *Mayor*, we initially note that the Eleventh District opined, "under certain circumstances of egregious conduct on the part of counsel, this court would not rule out the possibility that in the event an attorney had abandoned his client, Civ.R. 60(B)(5) would be applicable." Further, while Strawser communicated with Defendants, he blatantly misled

them about the status of their case, and Stewart's emails to him demonstrate that the Defendants were "without scienter." There is no evidence that Strawser performed any work on behalf of Defendants after he filed their answer and participated in the scheduling conference in January, 2010. The Notice of Substitution of Counsel cites Strawser's "cessation of any communication whatsoever." Defendants' substitute counsel's letter to Strawser refers to his "silence and continued inaction." Given the lengthy list of Strawser's deficient conduct, as set forth by the trial court, we cannot conclude, as Liberty asserts, that his conduct was akin to that of the attorney in *Mack.*

{¶ 89} We note that in the recent case of *Robinson v. Miller Hamilton Venture*, 12th Dist. Butler No. CA2010-09-226, 2011-Ohio-3017, the Twelfth District affirmed the decision of the trial court which granted a client's motion for relief from judgment on the basis of attorney abandonment, pursuant to Civ.R. 60(B)(5). The attorney, Larson, filed an answer on behalf of Miller Hamilton Venue ("MHV") six days late without leave of court. In the interim, Robinson filed a motion for default judgment, which the trial court granted. Id., ¶ 3.

{¶ 90} The trial court conducted a hearing on the motion for relief, where evidence was presented that "Larson was retained approximately two weeks after Miller Hamilton was served with the summons and complaint." *Id.*, ¶ 21. When Larson came to MHV to "pick up documents relating to the case and to collect his fee," Larson stated to MHV's owner, "[d]on't worry about it. I'll handle it." *Id.* Larson also told the owner that he would "take care of the case for [him]." *Id.* The Twelfth District noted:

> The trial court was certainly faced with competing interests in ruling on
>
> Miller Hamilton's motion for relief from judgment. As we have previously
>
> observed, "[o]n one hand is the principle of finality of judgment and the

non-moving party's right to have his judgment enforced. On the other is the principle that cases should be decided on their merits and the right of all parties to be heard." * * * Based on the facts and circumstances of this case, we do not find that the court abused its discretion in finding that Larson's conduct rose to the level of abandonment. Id., ¶ 22.

As in *Robinson,* we conclude that the trial court correctly determined that Strawser's conduct, which went "beyond the level of abandonment and amounts to affirmative misdirection," and which was more egregious than that of the attorney in *Whitt*, warranted relief under Civ.R. 60(B)(5). Our conclusion is supported by the principle that cases should be decided on their merits.

{¶ 91} Regarding the diligence of Defendants, Liberty directs our attention to this Court's decision in *Gorby & Assoc., LLC v. McCarty*, cited above. In *Gorby*, the attorney's billing statements reflected that he began researching and drafting an answer to the complaint, but there was nothing to indicate that he entered an appearance or filed an answer. His final billing statement was dated two months before the Appellees were properly served, and there was no evidence of further contact between Appellees and the attorney after service was perfected. Further, there was no evidence that Appellees advised their attorney that they had been properly served so that a timely answer could be filed. Id., ¶47.

{¶ 92} This Court determined:

It is undisputed that Appellees had notice and knowledge of the suit against them. Pedraza's billing records do not reflect that he filed an answer. There is no evidence of any contact between Appellees and Pedraza after the final billing statement in June, 2008, two months before service was perfected.

In other words, there is nothing before us from which we can conclude that Appellees acted diligently or that Pedraza mislead them into thinking that he properly handled their interests, and Civ.R. 60(B)(5) relief is inappropriate. Id., ¶ 50.

**{¶ 93}** In contrast to the Appellees in *Gorby*, Stewart's repeated emails to Strawser reflect Defendants' concern and sense of urgency about their case. Cyphers' email to Strawser reflects that she attempted to reach Strawser by phone in addition to email, to no avail. The certified letter Cyphers and Stewart sent to Strawser regarding his deficient representation is dated the same day of the trial court's entry adopting the Magistrate's decision. Defendants filed their Notice of Substitution of Counsel and motion for relief from judgment less than a month after the trial court adopted the Magistrate's decision.

**{¶ 94}** We agree with the trial court that Strawser's conduct is more egregious than the circumstances in *Whitt,* and the record reflects that Defendants acted diligently and were mislead and abandoned by Strawser. Thus, we find no abuse of discretion in the trial court's grant of Civ.R. 60(B)(5) relief. Liberty's third assigned error is overruled.

The judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Wayne E. Waite
Adam C. Armstrong
J. Pierre Tismo
Ryan C. Beck
Hon. Dennis J. Langer